## CHOCTAW ELECTRIC CO. v. CLARK.

No. 677.   Opinion Filed March 21, 1911.

(114 Pac. 730.)

1.  **MASTER AND SERVANT—Injuries to Servant—Acts of Coemployee.** Where an employee of an electric light company seeks to recover for injuries resulting from defective material furnished by an employee wno, otherwise than as to the furnishing of said material, was a fellow servant of plaintiff. it must be shown that such employee was authorized to furnish or supply the material which caused the injury.

2.  **MASTER AND SERVANT—Injuries to Servant—Actions—Sufficiency of Evidence.** Plaintiff was injured by falling from a defective pole that had been obtained from a telephone company, after it had been abandoned by the telephone company, by a foreman of a gang of which he was a member, and which was engaged in transferring one of the lines of the light company from one side of the street to the other. The company had no printed rules defining the authority of its foreman. The evidence established that the foreman had prior to that time obtained poles from the telephone company, and that the same had been used by employees of the light company with the knowledge and acquiescence of its superintendent under whose supervision the construction and building of the lines of the company was, and that in the instant case the superintendent appeared at the place of the accident immediately after it occurred, made no reprimand of the foreman or objection to his conduct; and that on the succeeding day the pole was rigged with the appurtenances of the company and thereafter used by it for some time. **Held,** that the evidence was sufficient to require the case to go to the jury for its determination whether the foreman was acting within his authority in obtaining and furnishing the pole to the members of his gang.

3.    EVIDENCE—Demonstrative Evidence—Injuries to Servant— Actions. Plaintiff's injuries were received from a fall from an electric light pole, about 30 feet in height. The fall was alleged to have been caused by the rotten, defective condition of the pole near its top, at which point plaintiff had struck his spur into the pole to support himself; and it slipped therefrom, because of the pole's decayed and defective condition. The pole was used for a short time thereafter by the electric light company, when it was removed and shortly thereafter was placed in a building. The upper part of the pole, including the part from which plaintiff fell, was introduced in evidence after the same had been identified. There was testimony by witnesses who saw the pole at the time of the accident to the effect that the piece introduced in evidence appeared to be in practically the same condition as when the accident occurred, except that it was some drier. There was no controversy about the condition of that part of the pole not introduced in evidence. Held, that the part offered was properly received in evidence.

4.    JURY—Number Necessary to Concur in Verdict—Actions Pending at Statehood. In the Indian Territory, prior to the admission of the state, a party to a civil action under the seventh amendment to the federal Constitution was entitled to a jury of twelve and a unanimous verdict. This right, as to pending actions, was upon the admission of the state continued by section 1 of the Schedule to the Constitution, and section 19 of article 2 of the Constitution (Snyder's Constitution, p. 83), authorizing three-fourths of the number of jurors concurring to render a verdict in a civil cause, has no application to causes pending in the United States courts of the Indian Territory at the time of the admission of the state.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County, Preslie B. Cole, Judge.*

Action by James Clark against the Choctaw Electric Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*F. H. Kellogg*, for plaintiff in error.
*Geo. A. Grace* and *H. L. Haynes*, for defendant in error.

HAYES, J. This action was originally brought in the United States Court for the Central District of the Indian Territory by defendant in error, hereafter referred to as plaintiff, against plaintiff in error, hereafter referred to as the "company,"

to recover damages for injuries alleged to have been received by plaintiff while in the employ of the company at South McAlester, Ind. T. The trial of the cause occurred in the district court of Pittsburg county, to which court it was transferred under the provisions of the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 267) and the Schedule to the Constitution upon the admission of the state. The trial was to a jury, and resulted in a verdict and judgment in favor of plaintiff for the sum of $1,000.

Nineteen assignments of error are set out in the company's brief for reversal of the cause, but in the argument these assignments are reduced to five propositions; and we shall consider the propositions on. which reversal is asked in the condensed form as set out in the argument in the brief.

It is first insisted that the trial should have resulted in a judgment for defendant either by the court's sustaining the company's demurrer to plaintiff's evidence or by sustaining its motion for peremptory. instructions to the jury to find for it. Able counsel for the company insists in his brief that plaintiff's evidence fails in four particular respects to establish a case in his behalf: First. That there was no proof of negligence on the part of the company. Second. Contributory negligence on the part of plaintiff. Third. That plaintiff had knowledge of all the conditions surrounding the work at the time of his injury and assumed all the risk incident thereto. Fourth. That the injury received by him was the direct result of the negligence of a fellow servant.

Whether there is anything tending to show negligence on the part of the company rendering it liable depends upon whether the construction foreman under whom plaintiff was working at the time he received his injury was acting within his authority. There is evidence reasonably tending to establish the following facts relative to the manner in which plaintiff received his injury: The company was engaged in the business of maintaining an electric light plant and in furnishing elec-

tric lights to the inhabitants of South McAlester. Plaintiff was
an employee of the company as a lineman; and at the time of the
accident was a member of a gang under the supervision and direc-
tion of one Allen as construction foreman. In the afternoon on
the date of the accident, the force of men, of which plaintiff was
a member, was engaged in taking down one of the electric wires of
the company from the poles on the east side of First street, and
placing it on poles on the west side of said street. At the corner
of First street and Grand avenue stood a pole about 30 feet in
height that belonged to a telephone company in the city, the use
of which had been abandoned by the company. To the north
of it about 60 feet away stood another similar pole be-
longing to the same company. Plaintiff was directed by the
foreman to ascend the pole at the corner and take therefrom the
cross-arms then upon it and place thereon cross-arms furnished
by the electric light company. In obedience to this direction,
given by the foreman, he ascended the pole on the north side,
after having observed its condition the best he could from the
ground. He unloosened the nuts from the bolts that fastened the
cross-arms on the pole, but was unable without help to remove
the bolts from their positions or to detach the cross-arms. He
thereupon called to a fellow workman, who had been sent to do
some work on the pole just north and had finished his work, to
ascend the pole to help him release the cross-arms. This fellow
workman, whose name was Miller, like plaintiff, ascended the pole
on its north side, on which side at the top of the pole plaintiff
was then standing. As Miller ascended the pole, plaintiff changed
his position to the south side of the pole, in order to give Miller
a place to stand. In doing so, it became necessary for him to and
he did unfasten his safety belt, after having stuck his climbing
spur into the pole. In his new position, with one hand upon the
cross-arms and the other upon the buckle of his safety belt, and
while attempting to refasten his safety belt in his new position,
the spur on his right foot slipped from its position on the pole,

his weight was thrown upon the cross-arms, which gave away, and plaintiff fell to the ground, receiving his injuries.

There is but little, if any, controversy as to plaintiff's contention that the pole at the point where he placed his spur in changing his position from which he subsequently slipped was in a decayed, rotten, or defective condition; but the company insists that Allen, the construction foreman, was without authority to furnish the pole upon which the accident occurred to plaintiff; and that his doing so was in violation of the orders of the company, and whatever negligence he was guilty of was the negligence of a fellow servant.

It is well-settled doctrine that it is the duty of the master to furnish the servant or the employee a reasonably safe place in which to work, reasonably safe appliances with which to work, reasonably safe material and reasonably competent fellow servants to work with; and this duty cannot be delegated by him so as to relieve him of liability for injuries resulting from its violation. *Neeley v. Southwestern Cotton Seed Oil Co.,* 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145. In the case cited the rule is stated in language quoted from the *Atchison, Topeka & Santa Fe Ry. Co. v. Moore,* 29 Kan. 633, as follows:

"In all cases at common law, a master assumes the duty towards his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools, and implements to work with, with reasonably safe materials to work upon, and with suitable and competent fellow servants to work with him; and, when the master has properly discharged these duties, then, at common law, the servant assumes all the risks and hazards incident to or at-attendant upon the exercise of the particular employment or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow-servants and coemployees. And at common law, whenever the master delegates to any officer, servant, agent, or employee, high or low, the performance of any of the duties above mentioned, which really devolve upon the master himself, then such officer, servant, agent, or employee stands in the place of the master, and

becomes a substitute for the master, a vice principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence."

But, where the injury has resulted from the negligence of an employee in furnishing defective material, it must be shown that the employee was authorized to supply the materials which caused the injury. 2 Labatt on Master and Servant, p. 1659; 26 Cyc. 1329.

Plaintiff in the instant case in his brief concedes, in effect, that foreman, Allen, was his fellow servant in all respects, except as to the furnishing of the defective pole from which he fell, and we think properly so. This foreman had charge of the construction crew under the management and supervision of the company's superintendent. He was not the head of a department of the company, nor was he in general charge of the company's affairs. He and the crew performed such work only as was assigned to them by the superintendent; the crew acting under his immediate control after having been assigned any piece of work by the superintendent. There is no direct testimony to establish the authority of the foreman to obtain and furnish the particular pole from which plaintiff fell, and the superintendent of the company testifies that he had no such authority; but there is evidence tending to establish that the foreman prior to the accident had at different times obtained poles from the telephone company, and the same had been used by the crew with the knowledge and acquiescence of the superintendent of defendant company under whose general supervision the foreman and his gang were. There is also evidence to the effect that the superintendent appeared at the scene of the accident immediately after it occurred; that he made no reprimand of the foreman; and that, on the succeeding day, the pole was rigged with the appurtenances of the defendant company and used by it for some time thereafter. Evidence that the foreman had been allowed at different times previously, with the knowledge of the superintendent, to obtain

from the telephone company. poles to be used in the work in which the crew was engaged, and that the defendant company, acting through its superintendent, ratified the acts of the foreman in this particular case, was competent to show circumstances from which the jury might reasonably infer that the foreman was acting within his authority. *St. L., I. M. & S. Ry. Co. v. Bennelt,* 53 Ark. 208, 13 S. W. 742, 22 Am. St. Rep. 187; *Robinson v. Nevada Bank,* 81 Cal. 106, 22 Pac. 478; 10 Encyc. of Ev. 24. The company had no printed rules defining the authority of its respective employees. There is positive testimony of the superintendent denying all authority of the foreman to obtain and furnish any of the material for the construction of the company's lines; but the evidence on behalf of plaintiff discloses circumstances relative to former similar transactions between the foreman and the company and the conduct of the superintendent relative to the transaction in this case, from which it might be reasonably inferred that the foreman was acting within his authority, and, upon the whole record, we think there was evidence sufficient to require the case to be sent to the jury.

The court permitted plaintiff to introduce in evidence the top half of the alleged defective pole, and this action of the court is also urged as error. But this character of evidence is competent when the object exhibited to the jury is identified and shown to be substantially in the same condition as it was in when the accident occurred. *King v. N. Y. Cent. & Hudson River Ry. Co.,* 72 N. Y. 607; *State v. Goddard,* 146 Mo. 177, 48 S. W. 82. Two witnesses testified to the identity of the pole, and that its condition was the same as when the accident occurred, except that it was drier than at that time, which was, no doubt, due to the fact that since shortly after the accident the pole had been kept in a house or shed, unexposed to the weather. Nor did the fact that only the top part of the pole was presented by plaintiff render its admission in evidence erroneous; for there is no contention as to the condition of the lower end or absent part of the pole, or that it in any way contributed to the accident. The company's conten-

tion in the trial court was that the lower part, as well as the upper part, was in good condition, and plaintiff appears to have conceded defendant's contention as to the lower part. If it had been contended or there had been evidence to the effect that the lower part of the pole was in a defective state, so that, upon ordinary observation, plaintiff would have discovered the condition of the pole approaching it, then the exhibition of the entire pole might have become important to the company and the introduction of only a part prejudicial; but no such contention has been made, and all that portion of the pole whereon plaintiff was standing at and immediately before the accident was introduced before the jury for inspection. All the facts as to how the pole had been cared for subsequent to the accident were before the jury.

In *Walker v. Village of Ontario,* 118 Wis. 564, 95 N. W. 1086, plaintiff sought to recover damages for injuries received by the falling of a bridge which he was crossing on a traction engine. A number of pieces of defective pine timbers were offered in evidence upon the trial as having been part of the bridge, for the purpose of showing defective condition at the time of the accident. After the accident, the wreckage of the bridge had been piled in a wagon yard, where the piece offered in evidence was sawed off of the timbers and preserved. There was evidence that such timbers were in substantially the same condition as they were when the accident occurred. The appellate court said:

"The decay of wood is a slow and gradual process, varying somewhat according to the conditions and the nature of the wood, but quite well understood by all men of ordinary intelligence and observation. Knowing how the wood had been kept from the time the bridge broke down until the time of the trial, such men could easily arrive at an approximately correct conclusion as to its condition at the time of the accident."

The court gave the following instruction:

"If you believe from the evidence that plaintiff was working for defendant under the orders of Elmer Allen, a line foreman, and in the line of his said work was directed by said foreman to climb said pole and do certain repair work, then it would make no

difference as to whether or not said pole was actually owned by said defendant, as it would be deemed to be under defendant's control and entitled to be treated as though said pole was actually owned by defendant."

This instruction, standing alone, does not correctly state the law applicable to the facts in this case. Whether, when it is read in connection with other instructions given, it is so modified as to render the error therein not prejudicial, is unnecessary here to decide. We suggest that, if at any subsequent trial of this case the facts require a similar instruction, this instruction be so modified as to state that if it is found that plaintiff was working for defendant under the orders of Allen as line foreman, and, if it is found that Allen had authority to secure for the company the alleged defective pole, then it would make no difference as to whether said pole was actually owned by the defendant, as it would be deemed to be under defendant's control, and may be treated as though the defendant actually owned it. The verdict of the jury was concurred in by only nine members thereof. There was objection to the verdict and to the rendition of judgment thereon by defendant, on the ground that it was not a unanimous verdict. Section 19, art. 2, of the Constitution, authorizes in civil cases three-fourths of the whole number of jurors concurring to render a verdict. But whether this provision of the Constitution applies to cases pending at the time of the admission of the state was considered by the court in *Pacific, etc., Insurance Co. v. Adams,* 27 Okla. 496, 112 Pac. 1026, where it was held to have no application to a case pending in the courts of Oklahoma Territory at the time of the admission of the state. In the Indian Territory, as in Oklahoma Territory, a party to a civil action, under the seventh amendment to the federal Constitution, was guaranteed a common-law jury of twelve and a unanimous verdict. This right was continued as to pending actions by section 1 of the Schedule to the Constitution, and the reasoning and conclusion of this court in the Adams case apply with equal force to the case at bar, and, in this respect, it must be held that the court committed error.

The judgment of the trial court is accordingly reversed, and the cause remanded.

All the Justices concur.