# GREAT WESTERN COAL & COKE CO. v. MALONE.

No. 2875. Opinion Filed September 23, 1913.

Rehearing Denied November 18, 1913.

(136 Pac. 403.)

1. **EVIDENCE—Opinions—Safe Place to Work.** It frequently happens that a witness is qualified to testify as an expert because of his experience and observation with reference to the matter under investigation.

   (a) Evidence of witnesses examined, and held competent under the foregoing rule.

2. **TRIAL—Repetition of Instructions.** It is not error to refuse a requested instruction, where it has already been given in substance by the court in another instruction.

3. **MASTER AND SERVANT—Safe Place to Work—Delegation of Duty.** It is the duty of the master to furnish his servant with a reasonably safe place to work and with reasonably safe tools and appliances with which to work, taking into consideration the nature and character of the work to be performed, and the dangers therefrom, and this duty cannot be delegated by him so as to relieve him of liability for injuries resulting from its violation.

4. **SAME—Injuries to Mine Employee—Instructions.** Various instructions examined, and held not erroneous under the facts of this case.

(Syllabus by Robertson, C.)

*Error from District Court, Latimer County;*
*Malcolm E. Rosser, Judge.*

Action by Forest Malone against the Great Western Coal & Coke Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Stuart, Gordon & Liedtke* and *Jones & Lester,* for plaintiff in error.

*Andrews & Day,* for defendant in error.

Opinion by ROBERTSON, C. This is an action for damages for injuries received by the plaintiff, Forest Malone, while employed as a switchman by defendant in its mine. There was

a judgment for plaintiff in the sum of $2,500, and defendant appeals and assigns eighteen specifications of error as grounds for reversal.

The first alleged error is that the court erred in permitting witnesses A. C. Williams and G. O. James to testify as to whether or not the place where the accident occurred was a dangerous place to work. In order to understand the objection urged it will be necessary to quote from the testimony of the witnesses. A. C. Williams testified as follows:

"I am 28 years old. I am a miner; was employed by the Great Western Coal & Coke Company. I saw the trip going up the slope. That he noticed the rope strike the frog pretty heavy, and the fire flying out of it (Case-Made, p. 46). At the time of the occurrence he was digging coal. Prior to that time he was on the slope of this same mine switching; that he had been switching on this particular slope fifteen or eighteen months; that he had been working on the other slopes for five years (Case-Made, p. 47) ; that he could judge from his experience as to whether a trip of coal cars was being pulled up that slope at a rate of speed that was safe or unsafe; that when the speed of the cars is fast, they are more likely to jump the track than when they are slow; that he had known the condition of the switch in controversy for about two months; that the lower bridle holding the throw rail was too loose; the bridle would slip downhill if you did not keep it wedged, and that would allow the flange of the wheel to ride the ball of the rail (Case-Made, p. 48). Q. From what you know of the condition of the track at this place, at the east eighth entry, would you say that the track was imminently dangerous in its condition for ordinary use in pulling cars of coal over it, or that it would be safe for a person to stay there under the promise that it would be repaired within a short time? Defendant: We object; he is asking for the conclusion of the witness, and it is for the jury to determine whether or not he was justified in remaining there. The Court: He can ask him whether or not, from his experience as a miner, this was an imminently dangerous place. Defendant: But not whether he was justified in remaining there? The Court: Of course not. Q. I'll ask you to state, in your judgment, whether that was an imminently dangerous place. Defendant: We object. The Court: He may answer the question. Defendant: We except. Q. Please answer the question. A. It was dangerous, but still a man could

work there under promise that it would be fixed. I worked under it for a while under the promise that they would fix it, but they claimed they did not have the material to fix the bridles with. I noticed it very carefully, and had a hammer and kept a spike there to hold the bridle in its place (Case-Made, pp. 49 and 50). That he had been working in this particular mine for four years; went to work at riding the rope; that he had been crippled on the same slope 44 days before. That he was working there at the time of this trial. That the company had promised him they would fix the bridle, but that they did not have the material with which to fix it (Case-Made, p. 51). That he had had cars off the track at this same point prior to the time the plaintiff was hurt, owing to the condition of the track. That they would often get off the track; sometimes they would ride the rail and sometimes would be thrown on the off side. That at the ordinary speed going up the slope a trip could be stopped in ten or fifteen feet distance, and that at the ordinary speed, when cars run off, he could get off the cars and ring the bell and stop the trip before injury could be done." (Case-Made, p. 53.)

G. O. James testified, in substance, as follows:

"He was 24 years of age; had been a miner about eight years; was riding the rope on the trip in which plaintiff got injured; that just as the trip started up the slope, when they were nearing the 10th entry, witness was sitting on the first hitch, holding on to the first car with his left hand, and his right hand on the second car; just as he got to the low rock he had to stoop, and 'he seemed like he was going to jerk the trip away from under me and slid me back on the second car, and when we got to the eighth it wrecked.' He never thought about getting off; it was running too fast. He has been working on different slopes for two, three, or four years; had been a rope rider pretty well all of the time; had worked on this particular slope for six or eight months; this trip was lots faster than the trips before; under ordinary conditions, a trip would stop in fifteen feet; there was a bell rope to bell the trip down; the trip was going too fast to attempt to reach it; it took both hands to hold on. From my experience as a rope rider, I can say that the speed of that trip was dangerous. When a trip is going at a very rapid rate of speed, it is more likely to jump the track than when it is going slow." (Case-Made, pp. 54-57.)

There was testimony to the same effect by other witnesses.

In the 5 Ency. Evidence, 535, is found the following text:

"It frequently happens that a witness is qualified to testify as an expert because of his experience and observation with reference to the matter under investigation."

The speed of the cars at the time of the accident was a material fact in the consideration of this cause. There was no positive method of ascertaining the same save by the testimony of men who used them, or were in a position to see and were familiar with the same. These witnesses were men of wide experience in mining, and knew, as a fact, whether the place was, or was not, dangerous. In other words, they were witnesses of such character and possessed of such knowledge that their opinion in matters such as were inquired about was competent to go to the jury, especially in view of their qualifications as disclosed by the record. Counsel for plaintiff, at page 13 of their brief, make some observations on this phase of the case that seem to us worth setting out; they are as follows:

"We must remember that these men were testifying about facts and conditions surrounding an occupation or business of which the ordinary man knows nothing. It is hard for the ordinary mind to perceive that lightless tunnel, some four or five feet high, some eight or ten feet wide, plunging 1,700 feet below the face of the earth, down which this track ran; hard for them to understand the construction necessary to adapt this track to the uses of a coal mine; hard for them to know what is safe or unsafe under those conditions. These employees were men having special knowledge of the things as to which they testified, and about which an ordinary juror knew nothing, and it seems to us not inadmissible for them to state whether or not, in conducting the operations of the mine, the pulling of a certain trip which they saw, under conditions and speed which were known to them as no evidence could make it known to any other man, it was safe or otherwise."

It is the duty of a trial court to get at the truth of the controversy; sometimes the only way the truth can be ascertained is by the opinion of witnesses. Such is the question under consideration. Mr. Chamberlayne in his Modern Law of Evidence, vol. 3, p. 2424, well states the rule as follows:

"In the fact that verbal description is necessarily ill adapted for the presentation of reciprocally interacting phenomena, it

is probable that, even should the witness succeed in giving to the jury an exact representation of many commingled phenomena, the tribunal would still fail to receive an accurate impression of the situation as a whole."

Defendant has not pointed out to us any better method of ascertaining the truth relative to the subject inquired about. Had there been a more satisfactory or practical method of proving this issue the objection might be considered meritorious; as it is, we cannot see how the defendant has been harmed by this testimony.

The fifth assignment of error is the refusal of the court to give the following instruction offered by defendant:

"It is claimed by plaintiff in his petition that he knew of the defective condition of the tracks and of switch No. 8, at which the car upon which he was riding was wrecked, and that he made complaint of said dangerous condition to the defendant on or about the day prior to his injury. You are instructed that the making of the complaint to the defendant or its officers did not absolve the plaintiff from the use of some degree of care in performing his work after such complaint had been made, and if it would have appeared to the ordinary man that his riding upon the cars over and along said track and switch at the time plaintiff rode upon the same and was injured was dangerous and hazardous, plaintiff assumed the risk of injury by reason of riding upon the cars over said dangerous track."

This question was fairly covered by instruction 8 of the court's general charge, to which no exceptions were taken, and the error complained of, if any, is of no consequence, inasmuch as it is the rule that it is not error to refuse a requested instruction if it has been given in substance by the court in another instruction.

The same disposition may be made of the next assignment, which complains of the failure of the court to give requested instruction No. 11, which deals with the same subject, and no further consideration need be given it. The giving of instruction No. 12, which reads as follows:

"In order for the plaintiff to recover in this action you must believe by a preponderance of the evidence that the de-

fective condition of the track or of the switch at or near the place set out in his petition was the proximate cause of the plaintiff's injury"

—was properly refused for the reason that the defective condition of the track was not charged to be the proximate cause of the injury; the reckless manner of running the cars, the high speed at which they were conveyed, was the principal cause of the accident, although its happening was aided by other reasons, among which, doubtless, was the defective condition of the track. The instruction as requested did not state the law applicable to the facts, and there was no error in refusing to give it. So, too, the same fault is seen in requested instruction No. 13. It requires the jury to find that the engineer was not negligent unless they found by a preponderance of the evidence that he drew the cars over and along the track at a rate of speed which would have been unsafe over a track properly constructed and placed. This is not the law. The engineer's negligence, like that of any other person, is to be determined by the jury from *all* the facts and circumstances in evidence. So, too, the same fault can be charged against requested instruction No. 14. Simply because the engineer may not have known the condition of the track would not relieve the principal of that knowledge, nor enable it to escape responsibility for failure to perform its plain duty.

It is next urged that the court erred in giving the following instructions:

"It was the duty of the defendant to furnish the plaintiff a reasonably safe place in which to work, reasonably safe appliances and machinery with which to work, and a reasonably safe track over which the cars were to be hauled, and a failure to furnish such a place, appliances, and track, if there was such a failure, was negligence on the part of the defendant, and if the injuries complained of were the result of such failure, your verdict should be for the plaintiff, unless you shall find that he assumed the risk of injury on account of such failure."

It is insisted that this instruction places altogether too high a duty on the master; that all the master is required to do is to exercise ordinary or reasonable care and diligence to provide

his servant with a reasonably safe place in which to work, with reasonably safe tools and implements with which to work, with reasonably safe material upon which to work, and suitable and competent fellow servants, and that this instruction requires defendant to furnish a reasonably safe place to work, etc., and imposes upon the master an absolute duty in this respect, and does not give him the privilege of using ordinary and reasonable diligence in the furnishing of such place, tools, etc.   The criticism offered to this instruction is unwarranted; and, while it is true that many of the cases go to the extent of saying that the master is bound to exercise reasonable care and diligence to provide his servant with a reasonably safe place in which to work, etc., as was said by Mr. Justice Williams in *Dewey Portland Cement Co. v. Blunt,* 38 Okla. 182, 132 Pac. 659, yet we do not think it was the intent of the court in that case to emphasize the necessity of the use of such language, or to overrule or criticise the holdings of *Neely v. S. W. Cotton Seed Oil Co.,* 13 Okla. 356, 76 Pac. 537, 64 L. R. A. 145; *Coalgate v. Hurst,* 25 Okla. 588, 107 Pac. 657; *C., R. I. & P. Ry. Co. v. Wright, ante,* 134 Pac. 427; *Choctaw Elec. Co. v. Clark,* 28 Okla. 399, 114 Pac. 730; or *Frederick Cotton Oil & Mfg. Co. v. Traver,* 36 Okla. 717, 129 Pac. 747.

In the last-named case Commissioner Harrison's treatment of this question is so satisfactory that we feel it to be our plain duty to follow and approve the same.   It follows:

"There is one other assignment which plaintiff in error urges at considerable length, which, in order to prevent its arising in a future trial, it might be well to settle here, viz., that the court erred in the following instruction: 'You are instructed that, under the law, it is the duty of the master to provide a servant with a reasonably safe place to work and with reasonably safe tools or appliances with which to work.'   It is contended by the plaintiff in error that this instruction is erroneous and vicious, in that it instructs the jury that the master must furnish a place reasonably safe, whereas his duty is only to use reasonable care in furnishing such a place.   The materiality of this distinction has not been generally recognized by the courts.   The two terms, 'reasonably safe place' and 'reasonable care in providing a safe place,' as a general rule, have been used interchangeably.   Some

of the standard text works use the term 'reasonably safe place' as the adopted rule. Others use the two terms interchangeably. In 20 Am. & Eng. Enc. of Law (2d Ed.) 55, we find the following text supported by more than 200 decisions from 37 different states, and from the United States Supreme Court and the courts of Canada and England, viz.: 'In accordance with the rule that reasonable care must be taken to protect one's servants from injury, masters owe to their servants the duty of providing them with a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment, having regard to the character of the services required, and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. This is a positive duty which the master owes, and is not one of the perils or risks assumed by a servant in his contract of employment; and the servant is entitled to rely upon the assumption that the master has performed the duty imposed on him by law, of providing a reasonably safe place to work.' In 26 Cyc. 1097, the following rule is stated: 'It is the positive duty of a master to furnish his servants with reasonably safe instrumentalities wherewith and place wherein to do his work, and, in the performance of these obligations imposed by law, it is essential that regard should be had, not only to the character of the work to be performed, but also to the ordinary hazards of the employment; and the servant may assume that the master has performed his duty.' This rule is supported by decisions from 43 states and from the United States Supreme Court and the courts of England and Canada. Our own court in the case of *McCabe & Steen Construction Co. v. Wilson,* 17 Okla. 355, 87 Pac. 320, uses the two terms interchangeably, or treats the terms as having the same legal effect. In the course of the opinion the court quotes from *Ruemmeli-Braun Co. v. Cahill,* 14 Okla. 422, 79 Pac. 260, as follows: 'It is the positive duty of the master to use reasonable care in providing safe tools, machinery, and appliances to work with, a safe place to work in, safe materials to work on. * * *' And, after quoting the above language, the court says: 'As above stated, it is now the fundamental and well-settled law of the land that it is the duty of the master to furnish the servant safe tools, materials, and structures to work with and upon; and to keep them in proper repair.' In view of the overwhelming recognition of the interchangeable use of the terms 'duty to provide a reasonably safe place,' and 'duty to exercise reasonable care in providing a safe place,' we cannot be constrained to treat this objection of itself reversible. However,

we believe the rule might be stated with more exact correctness by saying: It is the duty of the master to provide a servant with a reasonably safe place to work and with reasonably safe tools and appliances with which to work, taking into consideration the nature and character of the work to be performed and the dangers and hazards ordinarily arising therefrom."

In *Choctaw Elec. Co. v. Clark,* 28 Okla. 399, 114 Pac. 730, Mr. Justice (now Chief Justice) Hayes, speaking on this subject, said:

"It is well-settled doctrine that it is the duty of the master to furnish the servant or the employee a reasonably safe place in which to work, reasonably safe appliances with which to work, reasonably safe materials and reasonably competent fellow servants to work with; and this duty cannot be delegated by him so as to relieve him of liability for injuries resulting from its violation."

These authorities, to our minds, furnish a satisfactory answer to defendant's objection to the instruction given. Besides, no instruction was offered by defendant covering the objection urged, and it was the duty of defendant to submit to the court such an instruction as in its opinion would have correctly stated the law.

The objection urged against instruction No. 5 of the court's general charge cannot be sustained. It is charged that in this instruction the failure of the court to use the word "reasonably" results in making defendant the insurer of its servants, and that the positive duty is imposed on it to provide safe tools and place. This instruction, in our opinion, is a fair statement of the law on this phase of the case, and is not subject to the charge that the employer is thereby made the insurer of its servants. Read in connection with the balance of the court's general charge, it states in a fair manner the duties and requirements of both parties.

As to the twelfth assignment of error, it is sufficient to say that, having held the testimony of Jones, Harris, Elliott, and others competent under assignments 2, 3 and 4, the objection made that there is no evidence supporting the theory that the cars upon which plaintiff was riding were running at a high and dangerous rate of speed, such as would probably have caused a wreck though the track was in good condition, cannot be sustained.

Complaint is made, also, that the thirteenth instruction, which reads as follows:

"But if, though he knew of the condition of the track and saw that it was unsafe, yet it did not appear to be imminently dangerous, and he made complaint to the pit boss and coal rustler, and they, or one of them, promised to have the defect remedied within a short time, and from the nature of their employment plaintiff had a right to rely on these promises, and he proceeded to work on the trip as usual, relying on the promise that it would be repaired, and not believing that it was imminently dangerous, then he did not assume the risk of injury on account of the defective condition, even though he may have known that the track was unsafe"

—does not contain a definition of the word "imminent," and that such omission is prejudicial to defendant's interests, for that the jury should have been told that plaintiff was entitled to rely upon the promise to repair and to continue in his work, unless the risk of so doing was so apparent as that no ordinarily careful and prudent man would have continued to work under the conditions. We fail to see any merit in this contention. The word "imminently," with the average man, needs no detailed definition, and if such is the case, it was defendant's duty to either make the same to the jury in the argument, or request the court to define it by an additional instruction. If this was not done at the trial by defendant, it is too late to complain now.

The next assignment deals with instruction No. 11, which reads as follows:

"The burden of proof is upon the plaintiff to show, by a preponderance of the evidence, negligence on the part of the defendant, either as to the condition of the track or switch, or as to the rate of speed at which the cars were being hauled, or both concurring, and the burden of proof is upon the defendant to show that plaintiff assumed the risk of injury in working upon the track after its defective condition had been discovered, if it was defective."

It is urged that where the plaintiff in his own proof and by his own testimony shows a condition of affairs from which it must be deduced that there was contributory negligence or assumption of risk, the burden of proof cannot be held to be upon the defendant, and that in the case at bar plaintiff assumed the

risk incident to the employment, but attempts to avoid the result by pleading the promise to repair on the part of defendant, and that therefore the burden is upon the plaintiff, by his pleadings and proof, to show that by reason of the promise to repair he has successfully avoided the assumption of risk as it would. have existed under an ordinary contract of employment. But the record, in our opinion, fails to disclose such condition. Had the defect in the track been in itself the proximate cause of the injury, defendant might possibly, with some degree of reason, urge this contention, but, as is shown by the record, the condition of the track in itself was not alone responsible for the injury; the unwarranted speed of the trip and the negligence of defendant, or its servants, in permitting such speed, together with its failure to repair, combined with other circumstances in evidence to cause the accident which resulted in the injury. See as instructive cases on this subject: *Dewey Portland Cement Co. v. Blunt, supra; Curtis & Gartside Co. v. Pribyl,* 38 Okla. 511, 134 Pac. 71; *C., R. I. & P. Ry. Co. v. Duran,* 38 Okla. 719, 134 Pac. 876. Neither the pleadings nor the proof in this case will warrant us in holding that the burden was upon the plaintiff to show that by reason of the promise to repair he successfully avoided the · assumption of risk, as it would have ordinarily existed. The trial court instructed the jury that the burden of the case was upon plaintiff to show a preponderance of the evidence on all the material allegations of his petition, before he would be entitled to recover. The defendant interposed as an affirmative defense the question of assumption of risk, and the trial court properly held that the burden of proving same was upon it.

The remaining assignments, dealing with the assessment of damages, the rendition of the judgment on the pleadings and the evidence, and the action of the court in overruling defendant's motion for a new trial, in our opinion, are without merit. The record discloses a meritorious cause of action and a fair trial in which the rights of all the parties were jealously guarded by the learned trial judge. We have carefully examined the

numerous assignments of error, and feel that substantial justice has been done by the judgment, and that the same should therefore be affirmed.

By the Court:   It is so ordered.