## FRISCO LUMBER CO. v. THOMAS.

No. 3704. Opinion Filed June 9, 1914.

Rehearing Denied August 11, 1914.

(142 Pac. 310.)

1. **TRIAL—Direction of Verdict—Evidence.** When a defendant moves the court to instruct a verdict in its favor, the evidence must be considered in its aspects most favorable to plaintiff's contention; and if the evidence adduced, together with all the reasonable deductions and inferences to be legitimately drawn from it, fairly tends to prove plaintiff's cause of action, the motion for an instructed verdict should be denied.

2. **MASTER AND SERVANT—Injuries to Servant—Direction of Verdict—Evidence.** It is the settled law of this state that on the question of primary negligence, where the evidence is such that reasonable men may fairly differ as to whether negligence is shown, the determination of such question is for the jury. It is only where the facts are such that all reasonable men must form the same conclusion from them that the question is considered as one of law for the court.

3. **SAME—Instructions—Safe Place to Work.** It is not error for the court, in an instruction as to the master's duty relative to his servant's working place, to use the phrase, "the master is required to furnish a reasonably safe place for his employees to work," but it would be a better statement to say that "the master's duty is to use ordinary care in providing his servant a reasonably safe place in which to work."

4. **SAME—Assumption of Risk—Question for Jury.** The questions of contributory negligence and assumption of risk were properly left to the jury, under instructions which fairly state the law.

(Syllabus by Brewer, C.)

*Error from District Court, McCurtain County;
Summers Hardy, Judge.*

Action by John Thomas against the Frisco Lumber Company, for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

*Cocke & Willis,* for plaintiff in error.

*Collins & Collins* and *Ledbetter, Stuart & Bell,* for defendant in error.

Opinion by BREWER, C.   John Thomas, plaintiff below, recovered a judgment against the Frisco Lumber Company, as defendant, on account of certain personal injuries alleged to have been sustained because of negligence.   From this judgment the defendant has appealed to this court, and urges, in support of its contention for a reversal, three main propositions: First. That there should have been an instructed verdict for defendant.   Second. Improper instructions to the jury.   Third. Refusal to give a certain requested instruction to the jury.

1.   The first point urged by the defendant, considering them in the order named above, is discussed in the brief from every possible angle and is evidently the one upon which counsel rely with most confidence.

When considering whether the court should have instructed the jury to find a verdict for defendant, we are met at the outset with the well-settled rule that, for such a purpose, the evidence must be examined and considered in its most favorable aspect towards plaintiff's contention, and if the evidence adduced, taken with all the reasonable and natural deductions, and inferences to be legitimately drawn therefrom, supports and tends to prove the cause of action and the right to damages as claimed, then a verdict based thereon will be upheld.   *Solts v. S. W. Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776; *Moore v. First Nat. Bk. of Iowa City,* 30 Okla. 623, 121 Pac. 626; *St. L. & S. F. R. Co. v. Posten,* 31 Okla. 821, 124 Pac. 2; *C., R. I. & P. Ry. Co. v. McCulley,* 30 Okla. 178, 120 Pac. 279.

So, considering the evidence, the situation may be summarized as follows:   The defendant owned and operated a sawmill.   Plaintiff had been an employee for something like

two years, and at the time of the injury was engaged as engineer and worked in and about the boiler room. This boiler room was situated a few yards south of what is called the pump house; the pump house being situated 35 or 40 yards nearly south of the house called the shop. The millpond lies immediately east of the boiler house and pump house, the west embankment of which extends from the boiler house north and within a very short distance of the east end of the pump house. A logging railroad runs east and west between these two last-named houses. West of the main pond embankment, and between the boiler house and the pump house, there is a kind of pond filled with mud and water. The east end of the pump house, as originally made, had no opening except a window, but, in making some repairs or moving pipes about a year before the injury occurred, a number of boards had been stripped off the east end of the pump house from the ground to the top. One board broke off about five feet from the floor at a girder running crosswise; the break running with the crossgrain of the board, leaving a sharp projecting end extending down some eight inches from the girder into the opening left by the removal of the boards. After this opening was made, it was left in that condition, and the employees in and about the mill, and having occasion to go from one part of the works to another, would go from the boiler room along the pond embankment to nearly opposite the pump house, would pass over a slight depression or barrow pit in the ground on a plank to this opening in the pump house, through which they would go and pass on dry land on to the shops beyond. They could also go from the boiler room to the shops by leaving the east end of the boiler room, going westerly and northerly around the mud pond, and thus reach the shops all the time on dry land.

The plaintiff's duties, as has been suggested, kept him at the boiler house, and prior to the injury he had had slight, if any, occasion to know of the condition of the passage through

the pump house, except to know that it was used by the employees generally in passing from one part of the works to the other.

On the morning of the injury, the superintendent directed plaintiff to go quickly from the boiler house, where he was engaged, to the shop, to obtain some article necessary to operate a whitewash machine, which the superintendent had two men on hand waiting to operate. The plaintiff started, and went rather rapidly to carry out the command, and proceeded along the millpond dam across the board, and in undertaking to go through the opening in the pump house, the floor of which was raised about a foot or more from the ground, in stepping up and through, his head came into violent contact with the sharp end of this board, which, as has been said, was about five feet from the floor. He was grievously wounded, rendered unconscious, and has since become, and is, a physical wreck, with his earning capacity practically gone. The evidence shows that this was the usual way for the employees to go; that several of them whose duties caused them to use the way often and go through this opening, and who knew of this sharp board, had hit their heads against it; that the superintendent used this way, knew of the dangerous condition of the board, and had worked and directed work in and about the opening and knew it was being used as a passageway by the men; that this condition had existed several months. In going from the boiler room to the shop, the opening in the pump house could not be observed until the person came flush with it. The plank which led from the dam across the mud and water ran diagonally, and in using it a person had to pay attention to his steps, and just as he left the plank he was at and ready to enter the opening. This required a step up of twelve to eighteen inches from the ground to the floor, and, in making this step and straightening the body, brought the top of the head in direct contact with the sharp end of the board. The end of this board would not be in the direct line of vision of a man of ordinary height while he was on the ground in front of the opening, but, in making the step through the opening, it did

not leave room for a man to clear it without stooping. So, looking over the whole situation, it seems to us that the evidence justified the jury in finding that the company, after permitting this opening to become a part of the usual way of travel for its employees, was negligent in allowing this sharp-ended board to continue to project downward into the opening. Under the situation presented, any one, even with full knowledge of the condition, was liable to be injured. A moment's abstraction, thoughtlessness, or diversion of mind, was calculated to bring injury.

As was said in *Muskogee Vit. B. Co. v. Napier,* 34 Okla. 621, 126 Pac. 793:

"It is the settled law in this state that on the question of primary negligence, where the evidence is such that reasonable men may fairly differ as to whether negligence is shown, the determination of such question is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is considered one of law for the court. *St. L. & S. F. R. Co. v. Loftis,* 25 Okla. 496, 106 Pac. 824; *M., K. & T. Ry. Co. v. Shepherd,* 20 Okla. 626, 95 Pac. 243; *Neeley v. Southwestern C. O. Co.,* 13 Okla. 358, 75 Pac. 537, 64 L. R. A. 145; *Sans Bois Coal Co. v. Janeway,* 22 Okla. 425, 99 Pac. 153; *Mean v. Callison,* 28 Okla. 737, 116 Pac. 195; *Independent C. O. Co. v. Beacham,* 31 Okla. 384 [120 Pac. 969]."

Counsel for defendant are in error in assuming, in the argument, that the "giving of and the obeying of a negligent order" from the master is the gravamen of the action here. We take it that was pleaded and proven as a circumstance, showing the condition and situation in which the plaintiff was acting when he was injured. The negligence was in the manner in which this passage was permitted to remain, after it had become, with the full knowledge of defendant, the usual way of traveling by all the employees when required to pass from one part of the works to another.

The defendant's counsel are again in error in contending that "under the circumstances in this case and all the evidence, the plaintiff assumed the risk of injury as a matter of law, and

he is therefore not entitled to recover." The evidence in this case raises a jury question on this point, even without resort to section 6, art. 23, Williams' Ann. Const. Okla.; of course, applying that provision, the matter is not debatable.

In *Coalgate Co. v. Hurst,* 25 Okla. 588, 107 Pac. 657, the risks assumed by the servant are thus defined:

"He assumes all the ordinary risks of the employment which are known to him and which would have been known with the exercise of ordinary care to a person of reasonable prudence and diligence in the situation. It is his duty to exercise ordinary care and diligence, and observe and become cognizant of obvious defects in the machinery and working place, and he is chargeable with a knowledge of such risks and defects which would have been known to a person of reasonable prudence and care in his situation."

This question was fairly submitted to the jury. The term was defined and explained, and the jury were told when and under what circumstances the risks of the employment were assumed. The question of contributory negligence was also submitted to the jury, and no complaint is made on this point.

2. The complaint regarding instructions Nos. 2 and 3, as given by the court, seems to go to the statement they contain that "the master is required to furnish a reasonably safe place for his employees to work." This phrase is not regarded as a technically correct expression of the master's duty in this regard; it would be better to say that "the master is required to use ordinary care," etc.; but as shown by this court in *Frederick Cotton Oil & Mfg. Co. v. Traver,* 36 Okla. 717, 129 Pac. 747, the two ways of expressing the master's duty as to "safe place" are used interchangeably in text-books and decisions throughout the country. See, also, *Choctaw Elec. Co. v. Clark,* 28 Okla. 399, 114 Pac. 730; *Construction Co. v. Wilson,* 17 Okla. 355, 87 Pac. 320; *Ruemmeli-Braun Co. v. Cahill,* 14 Okla. 422, 79 Pac. 260; *Western Coal & Coke Co. v. Malone,* 39 Okla. 693, 136 Pac. 403.

3. The instruction asked by defendant and refused by the court was sufficiently covered in the general charge. We do not

feel it amiss to commend the attorneys in this case for the very excellent and exhaustive briefs on file, but we are unable to see wherein any reversible error has been made to appear.

The cause should be affirmed.

By the Court: It is so ordered.