## MIDLAND VALLEY R. CO. v. WILLIAMS.

No. 2918.   Opinion Filed July 7, 1914.

(141 Pac. 1103.)

1. NEGLIGENCE—Extent of Liability—Anticipated Consequences. "A person guilty of negligence or an omission of duty is responsible for all the consequences which a prudent and experienced party, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act reasonably possible to follow, if they had been suggested to his mind."

2. MASTER AND SERVANT—"Actionable Negligence"—Essential Elements. Three elements are essential to constitute "actionable negligence," where the wrong charged is not willfully and intentionally done, namely: (1) The existence of a duty on the part of the master to protect the servant from injury; (2) the failure of the master to perform that duty; and (3) an injury to the servant proximately resulting from such failure.

3. SAME—Duty of Master—Safety. The duty of the master is to exercise reasonable care and diligence to provide the servant with a reasonably safe place to work, with reasonably safe tools and implements with which to work, and reasonably safe material to work upon, and the failure to discharge this duty renders the master liable to the servant for injury resulting therefrom; the negligence of the servant not contributing thereto.

(Syllabus by Galbraith, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Charles A. Williams against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Edgar De Meules* and *Sol H. Kauffman,* for plaintiff in error.

*Guy F. Nelson,* for defendant in error.

Opinion by GALBRAITH, C. This was an action for personal injuries. It is charged in the petition that the plaintiff was employed as a brakeman by the Midland Valley Railroad Company; that on the day of the injury he was at work on a freight train composed of an engine, tender, five or six coal cars, a flat car and a caboose; that the coal cars of this train were being loaded with bridge timbers, old and new, on and near a bridge some 200 feet in length and 60 feet in height at its highest point from the bottom of a ravine which it spanned near Avant, in Osage county, Okla.; that the train was headed west, and that the track of the railroad from the west end of the bridge made a sharp curve to the left, and then in a short distance curved to the right; that the timbers were being conveyed from the ground to the coal cars by means of a boom operated by a pile driver, located on the flat car; that a number of timbers were piled together on the ground and a cable placed around them and then hoisted up and dropped into the coal car, and then the cable loosed and the timbers settled down into the car, two men being there to arrange them in some kind of order; that one car had been loaded at the east end of the bridge, and the train had been moved forward, and they commenced to load the second car from the ground along the side of the bridge down in the ravine; that it was the duty of the servant to watch the men loading the car and when the timbers at one place were loaded to signal the engineer to move the train up so as to be convenient to other timbers to be loaded; that in order to do so, it was necessary for him to be in a place where he could see the men at work and the engineer could see his signal; that the only place where this could be done was upon the timbers of the car that had been loaded; that standing upon the timbers of the loaded car, upon request of the men loading the other car, he signaled the engineer to move the train forward, and that the train moved forward with a jerk and in a negligent and careless manner, and, the timbers in the

car in which he was working being placed recklessly and carelessly, the piece on which he was standing turned, and he fell down in between the timbers, sprained his ankle, and broke one of the bones in one of his legs, and otherwise bruised and injured him; that the reckless and careless manner in which the train was moved forward, and the reckless and careless manner in which the timbers had been placed in the car on which he was standing, was the proximate cause of his injury, without fault or negligence on his part. The answer was a general denial and the affirmative defenses of assumption of risk and contributory negligence, and also it was set out that the servant had agreed in the contract of employment that if injured he would not sue the company for 90 days thereafter, and that this agreement had been violated by the servant. There was a reply filed, denying the matters of affirmative defense set up in the answer. Upon the issues thus formed the cause was tried to the court and a jury, and a judgment rendered for the plaintiff in the sum of $550. To reverse this judgment the railroad company has perfected an appeal to this court.

A casual examination of the record would justify the inference that this was a lawsuit of great magnitude, and that possibly the very existence of the railroad company depended upon its success in this appeal. There was filed in its behalf a printed brief and argument of 96 pages and a reply brief of 27 pages. There are 35 assignments of error in its petition in error. A careful examination of the record discloses that the questions involved in this lawsuit are simple, and that the rules of law applicable thereto are well recognized and have been often applied in the decisions of this court. Neither the amount of the judgment nor the questions raised seem to justify such extended labor as has been expended in the cause. An examination of the petition in error discloses that a great number of the assignments of error are captious, if not actually frivolous. We do not consider that these should be dignified by being separately set out and considered, and shall not do so.

From the statement of the issues above set out it will be seen that the plaintiff in error was charged with two separate and

distinct acts of actionable negligence, in this, that the railroad company, as the master, violated its duty to the defendant in error, its servant: First, in negligently starting the train which caused him to fall and receive the injuries complained of; and, second, that the place furnished him in which to work was unsafe, in this, that the timbers on which he was standing while performing his work were negligently and carelessly loaded. It thus appears that the real question presented in the case is, Did the master fail in one or both of these duties which, under the law, it owed its servant? and was such breach of duty the proximate cause of the injury received by the servant? and did the servant's negligence contribute to the injury? The determination of these questions does not call for extended argument or numerous citation of authorities. The court, in his instruction to the jury, practically limited the issues to the last act of negligence charged, namely, whether or not the timbers were so carelessly placed in the car as to make it an unsafe place for the servant to work, and whether or not such act was the proximate cause of the injury to the servant, and also whether or not the servant assumed the risk of such an accident, and also whether or not he was guilty of contributory negligence. The questions presented were for the jury under proper instructions as to the law by the court.

The rule of law as to whether or not the negligence charged was actionable was announced by this court in *C., R. I. & P. Ry. Co. v. Wright,* 39 Okla. 88, 134 Pac. 428, as follows:

"The master is bound to provide his servants with a reasonably safe place in which to work, with reasonably safe machinery, tools, and appliances with which to work, with reasonably safe material upon which to work, and suitable and competent fellow servants. When the master has so discharged these duties, then at common law the servant assumes all the risks and hazards incident to the particular employment or to the performance of the particular work, including those risks and hazards resulting from the negligence and carelessness of his fellow servants. *Neely v. Southwestern Cotton Seed Oil Co.,* 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; *McCabe & Steen Construction Co. v. Wilson,* 17 Okla. 355, 87 Pac. 320; *Coalgate Co. v. Hurst,* 25 Okla. 588, 107 Pac. 657; *Choctaw Electric Co. v. Clark,* 28 Okla. 399, 114

Pac. 730; *Frederick Cotton Oil Co. v. Traver,* 36 Okla. 717, 129 Pac. 747; *Dewey Portland Cement Co. v. Blunt,* 38 Okla. 182, 132 Pac. 659; *Chicago, Rock Island & Pacific Ry. Co. v. Duran,* 38 Okla. 719, 134 Pac. 876."

Again, as to responsibility for the negligent acts charged, it is said in *Chicago, Rock Island & Pacific Railway Co. v. Brazzell,* 40 Okla. 460, 138 Pac. 794:

"A person guilty of negligence or an omission of duty is responsible for all the consequences which a prudent and experienced party, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act reasonably possible to follow, if they had been suggested to his mind."

Although the action of the trial court in eliminating one of the acts of negligence was in the interest of the plaintiff in error, complaint is made of it in the brief, and it is argued that, since two acts of negligence are charged in the conjunctive, the proof must sustain each as alleged or no recovery could be had. This is not the law. The recovery could be had upon both or either one of the acts of negligence, as the jury was properly told by the trial court, if they found from the evidence that such act was the proximate cause of the injury, and that the negligence of the servant did not contribute thereto. *Midland Valley R. Co. v. Larson,* 41 Okla. 360, 138 Pac. 173.

It is insisted that there was no evidence to support the verdict of the jury, and that the trial court should have sustained the request for a peremptory instruction for the defendant. We cannot agree with the contention of counsel on this point. The law is settled in this jurisdiction that the jury are the triers of the facts in cases of this character, and that where the evidence reasonably tends to support their finding, this court will not weigh the evidence to determine whether or not it would have reached the same conclusion on the testimony as the jury. This has been announced so often that the citation of cases is not necessary.

It is urged that there was conflict in the testimony as to the manner in which these timbers, the old and the new, the long and the short, the round and the square ones, were placed in this coal car, on which the servant was standing and falling from which he was injured. The testimony of the witnesses for the railroad company tends to show that timbers were placed in the car with great care, while the testimony of the plaintiff, defendant in error, tends to show that they were placed in the car in a haphazard, if not a reckless, manner. This made a conflict in the testimony sufficient to send the question to the jury. *C., R. I. & P. Ry. Co. v. Brazzell, supra.* The jury heard the witnesses testify, and by their verdict found that the car was negligently and carelessly loaded. This finding is supported by the testimony. The trial court also approved the finding in denying the motion for a new trial. This is conclusive upon this court.

Again, it is complained by counsel for the railroad company that the court, in its instruction to the jury defining the measure of damages, directed that they might consider as an element thereof mental pain and suffering endured by the servant, if any. It is said in the brief:

"We defy any one to find a scintilla of evidence to the effect that the defendant in error suffered mental pain in this case because the little bone, the fibula, had been broken."

This "defy" seems to have been recklessly made. There is in the record an X-ray photograph of the injured leg and foot, which plainly shows the fracture of one of the bones between the ankle and the knee—the shinbone, if you please. Could any normal man sustain such an injury without mental pain or distress of mind? Again, the testimony shows that the ankle was dislocated; that the doctor at Pawhuska tried to pull it back into place, but failed and said that he would have to get some help, and that afterwards the servant was placed under an anaesthetic and some two or three men pulled his foot back into place. Would any sane man say that such an operation as this could be performed without mental pain or distress of mind? There can be

but one answer returned to these questions, and that completely vanquishes the "defy" of counsel.

It is contended that the engineer was not in the cab at the time the train started which resulted in the injury of the servant, and that under the rules of the company, which were introduced in evidence, the fireman had no right to move the engine unless in an emergency or instructed to do so by some superior authority, and it was not shown that such instructions were given, and therefore the fireman was not acting in the course of his employment, and the company is not liable. It seems to us that the company cannot gain any comfort from this position, since this train was at this particular place for the purpose of being loaded with the bridge timbers, and those in charge of the train knew the manner of loading the same, and that it was necessary to move the train forward in loading the cars, and that nobody could move the train except the engineer, and if he abandoned his place in the cab, and was not there to discharge his duty when the signal was given to move the train, this of itself was an act of negligence that would make the company liable for an injury resulting therefrom. *M., O. & G. Ry. Co. v. Brown*, 41 Okla. 70, 136 Pac. 1117; *Great Western Coal & Coke Co. v. Malone*, 39 Okla. 693, 136 Pac. 403. However, the court covered this feature of the case in his instructions, and advised the jury that under the rules of the company the fireman had no right to move the engine unless authorized by some superior or in the case of an emergency, and unless they found that the fireman had such authority, and the moving of the train caused the injury, that the fireman was not acting in the course of his duty in moving the train, and the company would not be liable for an injury resulting from the careless movement of the train. This question was fairly submitted to the jury, and they, by their verdict, found that the fireman was acting within the scope of his employment in moving this train, and that finding is sustained by the evidence.

In the instructions of the court to the jury, the court seems to have taken great care to fully cover the questions of law arising upon the issues in the case. Thirty instructions were given. Counsel criticize these instructions, and assert that they sound

very much like the "multiplication table set to music." We notice that those instructions which seem to have the rhythmical sound to the ear of counsel for the railroad company were not excepted to. From this fact, and also from the general form and scope of the instructions, we infer that they were prepared by and given at the request of the attorneys for the company. If this inference is true, and it seems to be justified, it is hardly fair for counsel to make this disparaging reference to their own handiwork. These instructions present the company's viewpoint, and the general character of the musical instructions are fairly illustrated by the following:

"(23) The court instructs the jury that if it finds, from the evidence, that the timbers in this case were carelessly and negligently loaded upon the car so that the same were unsafe and unsteady, and that the plaintiff was present when the timbers were being so loaded, and that he knew or ought to have known that they were so loaded, and that it was dangerous to stand upon them while the train was moving, and that if he did, he would be thrown and injured, and, knowing these facts, or that he should have known them, he stood upon the timbers as aforesaid and gave the signal to start the engine, then in such event, the plaintiff was guilty of such contributory negligence as to bar a recovery, and you will return a verdict for the defendant.

"(24) The court instructs the jury that, if you find from the evidence that the plaintiff, in performing his work on and about the train in question when he was injured, adopted the most dangerous method of two or more ways of performing his labor, and that a reasonably safe way was open and obvious to him, and that he selected the more dangerous way with knowledge, actual or constructive, of the fact that it was more dangerous, and that a reasonably prudent person of his age and experience in the exercise of due care would not have adopted such method of working on or about the train, then you will return a verdict for the defendant. The mere fact that the safer method is one which involves considerably more trouble than the more dangerous one is no excuse for adopting the latter.

"(25) The court instructs the jury that the burden of proof is upon the plaintiff to establish by a preponderance of the evidence the facts on which plaintiff charges negligence on the defendant, and unless plaintiff has so established said facts, then you will return a verdict for the defendant; and in this case, if the jury find that the weight of the evidence is in favor of the

defendant, or if the evidence is evenly balanced so that the jury are in doubt and unable to say on which side is the preponderance, then in either of these events you will return a verdict for the defendant. If the evidence fails to disclose what was the cause of the plaintiff's injury, and if from a careful consideration of all the evidence in this case the cause of such injury is unknown, then the plaintiff cannot recover, and you will return a verdict for the defendant."

The instructions are not properly subject to the criticism made of them by counsel in the brief for the plaintiff in error, nor was prejudicial error committed in denying the requested instructions complained of, for the reason that in so far as these requested instructions stated correct rules of law applicable to the issues, the law was fully and fairly covered in the instructions given by the court.

The amount of the judgment is not complained of. The plaintiff in error seems to have been given a fair opportunity to make its defense before the jury. The jury found against it in a small sum. This finding was approved by the trial court. We find that the judgment appealed from is just and should be affirmed.

By the Court: It is so ordered.