## FREDERICK COTTON OIL & MFG. CO. v. TRAVER.

No. 2287.    Opinion Filed January 21, 1913.

· (129 Pac. 747.)

1.   **MASTER AND SERVANT**—Injuries to Servant—Contributory
     Negligence—Instructions.  The defense of contributory negligence
     under section 6, art. 23, of the Constitution, being made a ques- ·
     tion of fact to be determined by the jury, it is the duty of the
     court in such cases, where an instruction on this theory is asked,
     to instruct the jury that one who has negligently contributed
     to his own injury cannot recover, and a refusal to give such
     instruction when asked is error.

2.   **SAME**—"Assumption of Risk"—Master's Negligence.   A ser-
     vant in accepting an employment assumes all the ordinary and
     usual risks and perils incident thereto, whether they be dangerous
     or otherwise, and all the risks he knows or may by the exercise
     of reasonable care know to exist, unless there is some agreement
     to the contrary.  He does not, however, assume such risks as are
     created by the master's negligence, nor such as are latent or are
     only discovered at the time of the injury.

3.   **SAME**—Duty of Master—Safe Place and Appliances.  It is the
     duty of the master to provide his servant with a reasonably safe
     place to work and with reasonably safe tools and appliances with
     which to work, taking into consideration the nature and character
     of the work to be performed, and the dangers and hazards ordi-
     narily arising therefrom.

(Syllabus by Harrison, C.)

*Error from District Court, Tillman County;*
*J. T. Johnson, Judge.*

Action by J. A. Traver against the Frederick Cotton Oil &
Manufacturing Company.  Judgment for plaintiff, and defend-
ant brings error.  Reversed and remanded.

This action was begun in the district court of Tillman county,
December, 1909, by J. A. Traver against the Frederick Cotton
Oil & Manufacturing Company upon a petition where it was al-
leged in substance that on October 2, 1909, the plaintiff was en-
gaged as a common laborer in defendant's employ; that as such
he was under the direction and control of one P. L. Burkes, a
vice principal of defendant; that a part of his duties, as desig-
nated by said vice principal, was to look after the pulleys and
belts used in running the machinery and to adjust the belts and

keep them in place on such pulleys; that such belts and pulleys were defective, in that the belts were loose and frequently slipped off and became detached from the pulleys, thus necessitating frequent adjustments, in order to keep the machinery running; that plaintiff was directed by the vice principal to keep such belts adjusted and in running order; that on the date of the injury the belts slipped off and became detached from the pulleys with such frequency the vice principal directed defendant to apply a certain preparation called "belt dressing," for the purpose of preventing their slipping off; that such belt dressing was an adhesive, sticky substance, the nature of which was known to the vice principal, but not known to plaintiff; that the pulleys and belts in question were up close to the roof of the mill building, some 25 feet above the ground; that, in order to adjust same it was necessary to climb a ladder and from there step onto a six by six on which he was compelled to stand while adjusting the belts; that the belts had to be adjusted from the opposite side of the pulley from where plaintiff stood; that it was necessary to balance himself on this six by six on which he was compelled to stand and reach over the pulley to adjust the belt; that in the adjustment of such belts it was necessary to hold same in position with his hands for some moments after the machinery started in order to prevent the belt from again dropping off, owing to its being so loose that the pulley would turn some moments before taking hold of the belt, and starting the machinery; that he had been in such employment about five days only, and was wholly inexperienced in this character of work; that after applying the belt dressing as directed by the vice principal, not knowing but what it would yet be necessary to hold the belt in place with his hand until the pulleys began taking hold of same, he adjusted the belt with the dressing on it, intending to hold same as he had theretofore done, and that the instant the pulley came in contact with the dressing, the machinery started, catching his hand, and drawing him under the machinery, causing the injury sued for. He alleged that such injuries were the result of defendant's negligence in failing to provide a safe place on which to stand while adjusting the belts and in directing plain-

tiff to apply the belt dressing under such conditions, and further alleged that the dangers incident to the use of the belt dressing under such conditions were wholly unknown to him, he being inexperienced, but were well known to the vice principal who had directed him to use same.

Defendant answered by general denial and by a plea of contributory negligence. Plaintiff replied, denying the new matter in the answer, and, upon the issues thus joined, the cause was tried at the October term, 1910, resulting in a verdict and judgment in favor of plaintiff for the sum of $700. From this judgment the Cotton Oil Company appealed.

*Shartel, Keaton & Wells* and *Wilson & Roe,* for plaintiff in error.

*H. P. McGuire* and *Lewis P. Mosier,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). It is contended that the allegation "that defendant negligently directed the plaintiff to apply the belt dressing which caused the machinery to start the instant it came in contact with such dressing and that the nature of such dressing was unknown to plaintiff, but was well known to defendant," was insufficient upon which to base a finding that defendant's negligence consisted in failing to instruct plaintiff as to the character of the dressing. However, as the judgment must be reversed under other assignments of error, and as the defects complained of may be avoided by making the allegation more definite and certain, we will not say whether such defect is sufficient to justify a reversal.

The decisive question involved is whether the court's failure to instruct the jury, "if they found from the evidence and from all the surrounding circumstances and under the surrounding conditions the plaintiff had negligently contributed to the injuries received, that, in that event, he could not recover," is sufficient to justify a reversal in the face of the whole charge. In paragraph 6 the court instructed the jury as follows:

"If you find and believe from the evidence by fair preponderance thereof that the plaintiff, while working for the defendant in its mill, as charged in his petition, suffered the injury

complained of, and at the time of such injury was free from negligence on his part, as the same has been hereinbefore defined, but that such injury was the direct and proximate result of the negligence of the defendant, as the same has been hereinbefore defined, then you are instructed that the plaintiff would be entitled to recover herein, and, if you so find and believe from the evidence, you will return a verdict in favor of the plaintiff for such sum as you may find would fairly compensate him for the injury sustained, not to exceed the amount sued for in his petition."

It is contended by plaintiff in error that this instruction, either standing alone or considered in connection with the entire charge, is insufficient to give the jury to understand that, if plaintiff was guilty of contributory negligence, he could not recover. In the absence of any other paragraph in the court's charge, and in the absence of any language in the entire charge, by which the jury might be given to know that if plaintiff was guilty of contributory negligence he could not recover, we think the contention is well taken. The law as to what constitutes contributory negligence is fairly stated in the charge, but the court nowhere told the jury that, if the plaintiff had negligently contributed to his own injuries, he could not recover. We cannot estimate what effect this failure to so instruct may have had on the jury. It may have had no effect whatever. It may have had no influence upon the jury in reaching the verdict. On the other hand, it may have had a material influence, and, if the jurors were influenced thereby, then whatever influence or effect it had on their minds was prejudicial to the rights of defendant.

The defense of contributory negligence, under section 6, art. 23, of the Constitution, being made a question of fact to be determined by the jury, it is the duty of the court in such cases, where an instruction on this theory is asked, to instruct the jury that one who has negligently contributed to his own injury cannot recover. The same arbiter of justice which requires an instruction that the plaintiff may recover if the defendant be found guilty of negligence also requires an instruction that plaintiff cannot recover if he be found guilty of negligently contributing to his own injuries.

It is also contended by plaintiff in error that the plaintiff below, being an adult man, possessing ordinary intelligence, should have known the dangers incident to this character of employment, and should be held to have assumed the risk of such dangers.   This contention, however, cannot be sustained under this record.

It is true as a matter of law that a servant assumes the risk of such dangers as naturally arise from the nature of the work to be performed.   But it is equally true that he does not assume the risk of such dangers as arise from the negligence of the master when such negligence is unknown to the servant.

"Where a person voluntarily enters into a contract of hiring, he assumes all the risks and hazards ordinarily and usually incident to such employment, and will be presumed to have contracted with reference to such risks and hazards."   (20 Am. & Eng. Enc. of Law, 109.)

But "risks arising out of the negligence of the master, or of one whom the master intrusts with the superintendence of his work, are not risks ordinarily incident to the employment, and are not assumed by the employee."   (*Id.* 123.)

"While a servant does not assume the extraordinary and unusual risks of the employment, the rule is well settled both in England and in this country that, on accepting employment, he does assume all the ordinary and usual risks and perils incident thereto, whether it be dangerous or otherwise, and also all risks which he knows, or may, in the exercise of reasonable care, know, to exist, unless there is some agreement to the contrary.   He does not, however, assume such risks as are created by the master's negligence, nor such as are latent or are only discovered at the time of the injury."   (26 Cyc. 1177.)

However, for two reasons, we cannot agree that the question of assumption of risk as a legal proposition is involved in this controversy, viz.:   First, because, under the facts disclosed in this record, the decisive issues were the question of negligence on the part of defendant, and contributory negligence on the part of plaintiff; second, that the issue of assumption of risk was not raised by the pleadings.   The defendant did not plead assumption of risk, but pleaded contributory negligence.   It is true the court at the request of defendant gave some instructions on the ques-

tion of assumption of risk which were prepared by defendant, but we cannot see from the record where this was properly an issue in the case. However, on the issue of contributory negligence, there seems to be a wide divergence of opinion between the learned counsel for plaintiff and defendant over the meaning of, and proper construction to be given to, section 6, art. 23, of the Constitution. The effect of plaintiff in error's contention is that the rule of law generally recognized before that time was not changed by the adoption of this provision of the Constitution, and that the court still has power to say to the jury whether there is or is not sufficient evidence to constitute contributory negligence. On the other hand, it is contended by defendant in error "that the issue of contributory negligence having been made by the answer, and evidence having been introduced thereon, the court, under the provisions of the Constitution, was required to submit the issue to the jury." Section 6, art. 23, of the Constitution, reads as follows:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

Now, we believe that this section of the Constitution means that:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

However, we cannot hold that the court has fully discharged its duty in submitting this question to the jury, however fully the law may have been defined, unless it also instructed the jury that, if they should find that the plaintiff had been guilty of contributory negligence, he could not recover.

There is one other assignment which plaintiff in error urges at considerable length, which, in order to prevent its arising in a future trial, it might be well to settle here, viz., that the court erred in the following instruction:

"You are instructed that, under the law, it is the duty of the master to provide a servant with a reasonably safe place to work and with reasonably safe tools or appliances with which to work."

It is contended by plaintiff in error that this instruction is erroneous and vicious, in that it instructs the jury that the master must furnish a place reasonably safe, whereas his duty is only to use reasonable care in furnishing such a place. The materiality of this distinction has not been generally recognized by the courts. The two terms, "reasonably safe place" and "reasonable care in providing a safe place," as a general rule have been used interchangeably. Some of the standard text works use the term "reasonably safe place" as the adopted rule. Others use the two terms interchangeably. In 20 Am. & Eng. Enc. of Law (2d Ed.) 55, we find the following text supported by more than 200 decisions from 37 different states, and from the United States Supreme Court and the courts of Canada and England, viz.:

"In accordance with the rule that reasonable care must be taken to protect one's servants from injury, masters owe to their servants the duty of providing them with a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment, having regard to the character of the services required, and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. This is a positive duty which the master owes, and is not one of the perils or risks assumed by a servant in his contract of employment; and the servant is entitled to rely upon the assumption that the master has performed the duty imposed on him by law, of providing a reasonably safe place to work."

In 26 Cyc. 1097, the following rule is stated:

"It is the positive duty of a master to furnish his servant with reasonably safe instrumentalities wherewith, and place wherein, to do his work, and, in the performance of these obligations imposed by law, it is essential that regard should be had, not only to the character of the work to be performed, but also to the ordinary hazards of the employment; and the servant may assume that the master has performed his duty."

This rule is supported by decisions from 43 states and from the United States Supreme Court and the courts of England and Canada. Our own court in the case of *McCabe & Steen Construction Co. v. Wilson,* 17 Okla. 355, 87 Pac. 320, uses the two terms interchangeably or treats the terms as having the same

legal effect.    In the course of the opinion the court quotes from *Ruemmeli-Braun Co. v. Cahill*, 14 Okla. 422, 79 Pac. 260, as follows:

"It is the positive duty of the master to use reasonable care in providing safe tools, machinery and appliances to work with; a safe place to work in, safe materials to work on.    *    *    *"

And, after quoting the above language, the court says:

"As above stated, it is now the fundamental and well-settled law of the land that it is the duty of the master to furnish the servant safe tools, materials, and structures to work with and upon; and to keep them in proper repair."

In view of the overwhelming recognition of the interchangeable use of the terms "duty to provide a reasonably safe place," and "duty to exercise reasonable care in providing a safe place," we cannot be constrained to treat this objection of itself reversible. However, we believe the rule might be stated with more exact correctness by saying:

"It is the duty of the master to provide a servant with a reasonably safe place to work and with reasonably safe tools and appliances with which to work, taking into consideration the nature and character of the work to be performed and the dangers and hazards ordinarily arising therefrom."

This, we think, disposes of the meritorious contentions urged by plaintiff in error, and for the reasons herein given, considering the record as a whole, we do not believe that the decisive issues were fairly submitted to the jury. Therefore the judgment should be reversed and the cause remanded.

By the Court:   It is so ordered.