## CHAPPELL v. CITY OF NEWKIRK.

No. 3970. Opinion Filed May 18, 1915.

(149 Pac. 140.)

**MUNICIPAL CORPORATIONS—City Attorney—Extra Compensation.**
C, was elected city attorney of Newkirk in 1907, and served four years. In December, 1907, he defended the city in two lawsuits, pending when he took office. In 1908, he defended two other suits. In 1909, he entered the appearance of the city in the Supreme Court, by direction of the city council, which, at the same time, entered into a written contract with two other attorneys, to represent the city, stipulating that they should be paid reasonable compensation. The city reimbursed C, for all sums actually expended by him in connection with the litigation. During all of the times in which a claim is made for extra compensation, C, was receiving the salary provided by law. No claim was ever made for extra compensation during the four years he was in office, and not until in March, 1912, after the official relations had terminated. C, bases his right to recover on the theory that the services were "extra official," and that the law would raise, out of the conduct of the parties, an implied promise to pay. Held, that the law will not raise an implied promise to pay extra compensation, out of the conduct of the parties, viewed in the light of the official relationship existing.

(Syllabus by Brewer, C.)

*Error from District Court, Kay County.;*

*W. M. Bowles, Judge.*

Action by G. A. Chappell against the City of Newkirk, a municipal corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

*G. A. Chappell, in pro. per.*

*Virgil H. Brown,* City Atty., for defendant in error.

BREWER, C.  G. A. Chappell, as plaintiff below, sued the city of Newkirk, an incorporated city of the first class, on an open account for the sum of $1,450. The account sued on was attached to the petition and claimed certain sums for legal services rendered said city by plaintiff in connection with five separate lawsuits. Three of said suits were ordinary proceedings at law against the city; one of said suits being a suit in mandamus, brought by the city of Blackwell against the secretary of state, and the other a contest between Blackwell and Newkirk over the result of a county seat election. The city filed an answer, which alleged, substantially, that in the year 1907, plaintiff was elected by the voters of the city of Newkirk as its city attorney, serving two years, and that at the expiration of his first term he was re-elected and served a second term, making four years of service in such capacity; that, at all of the times it is alleged said services were rendered, plaintiff was its duly elected, qualified, and acting city attorney, and was receiving at all said times the stated salary provided by ordinance for such officer; that in all of said suits he was acting in such capacity and for the salary of the office, without any contract or understanding of any kind or character, express or implied, that he should receive for his services any other, further, or different compensation than that provided by law. The answer admitted that plaintiff was directed to enter the appearance of the city in the contest proceedings, and averred

Form No. 18

that other attorneys were employed by proper resolution of the city council to represent the city in such proceedings; and that such attorneys did so. Numerous other things were set up in the answer, one being the statute of limitations as to several of the items claimed. It is also shown that the city council allowed claims and paid same for all items of actual expense incurred by plaintiff in defending the city; that, during his four years of service, he never filed a claim for any extra compensation for his services, but did so after his two terms had expired and the relation between the parties had ceased. The court overruled plaintiff's demurrer to the answer of the city, and this appeal is the result.

A number of questions are argued, both *pro* and *con* in the briefs, presenting numerous contentions; but, after giving careful consideration to them all, it is our opinion that there is only one question appearing in the record presented in this case, necessary to be considered. That point is this: Will the law imply a promise to pay upon the part of the city for these services, upon a proper consideration of the relation of the parties and the facts and circumstances connected with the transactions? Having come to this conclusion, it is unnecessary to go into the question of whether the services rendered were in fact "official" or "extra official." If the law will not imply a promise to pay under the facts, circumstances, and relations of the parties, then this question would be immaterial. Neither is the question of the power of the city to contract with an attorney to represent it, when its corporate affairs are involved. A city has such power. *Treeman v. City of Perry*, 11 Okla. 66, 65 Pac. 923; *City of Holdenville v. Lawson*, 40 Okla. 38, 135 Pac. 405. Neither do we feel called upon, in view of the conclusion to which we have come, to go into and pass upon the power of the city to employ an attorney to represent its real or fancied interests in the location of a county seat by the voters of a county, and to expend funds from the city treasury for this purpose. It might be well, however, to suggest

that grave doubt arises as to whether such services would be "in furtherance of any purpose for which the corporation was created." *Field v. City of Shawnee,* 7 Okla. 73, 54 Pac. 318. Nor is it necessary to determine the question of limitation as to all the items of the account, save those relating to the contest matter.

We do not believe, under the circumstances disclosed, that the law can attach to the conduct of the city an implied promise to pay. This conclusion finds its root in the relation of the parties, in the light of which their conduct must be construed. Before discussing the matter more fully as to details, it is well to remember that the settled rule in this state seems to be given expression in the case of *Board of County Commissioners of Washita County v. Brett,* 32 Okla. 853, 124 Pac. 57, wherein it is held:

"One who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which finds authority of law; and it is not sufficient that the services performed for which payment is claimed were beneficial."

In that case a number of authorities are collected, and it has been followed since. *Anderson v. Board of Commissioners,* 44 Oka. 164, 143 Pac. 1145. But it is claimed that the services were "extra official," and that they arise from a contract, implied by law, growing out of the conduct of the parties, and that therefore, although an officer and drawing a salary, that the rule above announced has no application.

Section 938, Rev. Laws 1910, reads:

"An implied contract is one, the existence and terms of which are manifested by conduct."

We will review briefly the situation of the parties when the services were rendered, with a view of ascertaining whether or not

it is reasonable to suppose that the city expected to pay extra
compensation for these services, or that it would be under any
legal obligation so to do at the time they were rendered. At the
time plaintiff entered the political arena, fought for and won his
office, two of the lawsuits involved here were pending against the
city, and they were tried and the services rendered in December,
1907. From that date until March 4, 1912, no claim was made
for extra compensation for trying these lawsuits, and, so far as the
record shows, nothing was ever said between the parties about it,
although the nature of their relations as city officers must have
thrown them together often in much confidential business discus-
sion. It is claimed that the services in these two cases were extra
official, and that there was an implied agreement to pay for them,
first coming to light five years after the attorney ought to have
had his money, if he had any legal right to demand it. The next
suit appears to have been tried in the spring of 1908, and one of
the contest proceedings was in October of the same year. The
main contest proceeding arose early in 1909, and probably was not
finally disposed of until after defendant went out of office. In
that case, it is very significant that the city council, in a formal
manner, on the 16th day of January, 1909, entered into a written
contract, based upon a resolution, signed by the mayor and
attested by the clerk and with the seal of the city, by which said
city employed Judges King and Pinkham of that city to represent
it in the Supreme Court in the contest proceedings. In that con-
tract, no sum is named to be paid these attorneys; it being merely
recited that they shall receive reasonable fees, to be fixed after
final disposition of the case. About this same date, it is true, the
city attorney, together with the other lawyers, was directed to
enter the appearance of the city in the Supreme Court; but no
contract was made looking toward further compensation to the
city attorney. If it had been in the minds of either the city coun-
cil or the city attorney that he was to perform services for the
city not required by his office, and was to be paid compensation
therefor, other than his fixed salary, it certainly would have been

thought necessary to mention his name in connection with the written employment of the lawyers engaged in the matter. Further, during the county seat contest and the preliminaries, whenever actual expense was incurred by the city attorney, claims were allowed and paid, fully reimbursing him; and yet his claim on this one item alone, or rather the two items growing out of the contest proceeding, is $1,000 for his compensation, and he bases it all upon the claim that there was an implied promise to pay. We cannot view the matter and the conduct of these parties in that light. It seems more reasonable to us that the city council thought that whatever he was doing regarding the litigation in which the city was involved was in his official capacity, for the salary he was receiving; that in their more important matters the city, exercising the right it had, employed other lawyers to represent its interest. Plaintiff's own conduct lends color to this view. It would be strange to suppose that a city attorney would go on and hold the office from year to year, receiving the salary attached to it, and his actual expenses from time to time, and never be sufficiently interested to claim, or undertake to obtain, at least some part of the many hundreds of dollars he thought to be due him. It is clear to us that the law will raise no implied promise upon such a state of facts, considering the relation of the parties and their conduct.

We have discussed this matter so far on the assumption that the city could employ its city attorney to perform extra official services for it; but this assumption has been used only for the purposes of this case, as we have not had time or an inclination to consider just how far, or whether at all, public policy might interdict such a course.

The cause should be, in all things, affirmed.

By the Court: It is so ordered.