## FOLSOM-MORRIS COAL MINING CO. v. DILLON.

No. 6965—Opinion Filed Sept. 26, 1916.
Rehearing Denied Jan. 30, 1917.

(162 Pac. 696.)

1. **Master and Servant—Action for Injury—Negligence—Question for Jury—Evidence.**

The evidence is examined, and held to be sufficient to authorize the court to submit to the jury the question of the negligence of the defendant under all the circumstances proven in the case; and held, further, that a verdict finding the defendant guilty of negligence is supported by the weight of the evidence.

2. **Same—Contributory Negligence—Burden of Proof.**

In an action for personal injuries, where the evidence establishes primary negligence on the part of the defendant which proximately causes the injury complained of, with nothing in the circumstances establishing contributory negligence on the part of the person injured, the burden of proving contributory negligence rests on the defendant, when it is interposed as a defense in such action.

3. **Appeal and Error—Remarks of Counsel—Presumptions.**

Statements made by counsel in the argument to the jury, which appears to be improper from the printed testimony of the witnesses, will not be held improper when such statements may have been warranted by the demeanor of the witnesses on the stand in the presence of the jury, where the trial court overrules an objection to such statements, but this court will indulge the presumption that the conduct of the witnesses was such as to warrant the statements made, and that the argument was legitimate.

4. **Trial—Instructions—Veracity of Witnesses—Voucher.**

Instructions, to the effect that when a party produces a witness at the trial of a cause he thereby vouches for his truth and veracity, are properly refused.

5. **Prejudicial Error—Admission of Evidence.**

No prejudicial error was committed by the trial court in admitting the evidence complained of.

(Syllabus by Campbell, C.)

Error from District Court, Coal County; Robt. M. Rainey, Judge.

Action by J. M. Dillon administrator of the estate of Scott Dillon, deceased, against the Folsom-Morris Coal Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. G. Ralls and Dorset Carter, for plaintiff in error.

C. M. Threadgill, A. T. West, and Trice & Moore, for defendant in error.

Opinion by CAMPBELL, C. This action was commenced in the district court of Coal county by J. M. Dillon, administrator of the estate of Scott Dillon, deceased, as plaintiff, against the Folsom-Morris Coal Mining Company, as defendant, for the re-

covery of damages for the wrongful death of Scott Dillon. A trial was had and a verdict for $2,000 was returned by the jury, and judgment was rendered upon the verdict for the plaintiff against the defendant for that amount.

The defendant has appealed from such judgment, and asks a reversal of the judgment upon 40 different assignments of error. In the brief of plaintiff in error the statement of the assignments covers 17 pages, and just 25 pages of the brief are covered with a discussion of the entire 40 errors assigned, each one of the entire number taking up some space. In fact, the argument consists mainly in the restatement of the errors assigned, with an affirmation that error was committed in the manner assigned. Authorities are cited in support of only 3.

The deceased was employed as a driver by the defendant, and was assigned to work in defendant's mine No. 8, entry No. 1, south, and was killed in making his first haul. His work consisted in driving a mule, which was pulling what was called "trips" from the rooms in the entry down to the "parting" track. The haul was down grade at places, and just before the "parting" track was reached, it was necessary to sprag the "trip" to keep it from running away. On the occasion of the injury, the deceased was hauling one empty and one loaded "trip." On the "parting" track there were other loaded "trips" standing. The deceased stopped at the place where the "trips" were usually spragged, and the drive boss spragged his "trip" for him, and he continued to drive down the slope, occupying the same position that all drivers do. It seems from the evidence that there is a certain point where the drivers are expected to jump off of the running "trips," but the evidence does not show that the deceased knew about this. He did not jump off at the customary place, but remained in his position, and the "trip" ran down the slope and failed to stop when reaching the "parting" track, but ran into this track and bumped into the "trip" standing on the "parting" track, and the deceased was mashed in the collision and was killed. At the time of his death, he was just past 19 years of age, and he had had very little experience, if any, as a driver in mines, and no experience as a driver in this particular mine, and had not been instructed relative to the dangers of this drive. It was alleged that his death was due to various acts of negligence on the part of the defendant. In relation to the negligence of the defendant, the petition alleges as follows:

"That he was put to such labor in a certain entry, known as 'Entry No. 1, South,' which was then and there a place dangerous and unsafe for the said intestate to be employed. That said entry was too narrow, and that the pitch and incline in said entry were too great and too steep. That along said entry ran a track over which cars, both loaded and empty, were drawn by animal power. That one or more cars drawn along said entry is known as a 'trip.' The empty trips being conveyed to the working places and the loaded trips being conveyed from the working places to the main slope of said mine. That the driver is the person who drives the animals that draw the trips, and said driver has charge of said trips. That while working as a driver in said entry and in charge of a trip, consisting of one loaded car and one or more empty cars being conveyed towards the said main slope, said intestate stopped said trip for the purpose of having the same spragged by a servant of defendant; that said car was then and there spragged by said employe of defendant, who negligently and carelessly performed said duty. That thereupon said intestate started with said trip down said entry toward the main slope. That in front of intestate and on the same track he was on, on which said trip was being conveyed, stood one or more cars loaded with coal, which fact was unknown to said intestate at that time. That by reason of the steep pitch and incline of said entry, and because of the negligence of defendant's servant which spragged said trip, and because of intestate's inexperience and lack of familiarity with the place, said trip moved at a high and dangerous rate of speed down said entry and became what is known as a 'runaway trip.' By reason of the narrowness of said entry said intestate was unable to jump or alight from said trip, said entry being of such a narrow width as not to allow room for said intestate to spring from the trip with safety. Defendant had also failed to maintain in said entry whitewashed shelter holes, as the law directs, so that said intestate was unable at any time to alight from said trip while the same was in motion. That said trip, going rapidly down said entry, was hurled and dashed against the rear of the trip standing on the track, and said intestate was caught between the two trips, and was then and there crushed, mangled, bruised, and injured to such an extent that within a few hours he died as the result of said injury. That the death of said intestate was due directly and proximately to the negligence of the defendant, and that in the following particulars: In employing said intestate to perform certain labor, and then changing said employment to another more dangerous and hazardous; by putting said intestate to do work requiring age, skill, and experience, which the defendant knew, or could have known, that said intestate did not possess; by allowing its servant to carelessly and negligently sprag the trip upon which the said intestate was riding at the time of his injuries, as aforesaid; by constructing the entry in which said intestate was injured in such a

dangerous and unsafe manner, in that the pitch and incline of the same was too great and the width of the same too narrow; in negligently and carelessly allowing the car or cars against which said intestate was dashed and thrown to stand upon said track in said entry, and by failing to maintain whitewashed shelter holes, as the law directs."

The testimony offered by plaintiff in support of the allegations of negligence showed that the entry was rather a steep decline just before reaching the point on the track referred to by the witnesses as the "parting," and that it was necessary to stop the trips before going down this decline and sprag them; that the drive boss had just taken down a trip, left it standing upon the parting track, and gone back to meet the deceased at the place where it was necessary to sprag and performed the work of spragging the trip which the deceased was bringing down; that the trip which the deceased was bringing down and which the drive boss spragged did not stop running before it came upon the other cars, standing upon the parting track where the drive boss had left them, but ran into them, and in the collision the deceased was mashed and killed; that it was the practice of all drivers on this track, coming from the rooms in this entry down to the parting track to get off of the "trip" at a certain place; that the deceased did not get off at this place, and the driver boss ran up to the side of the trip and told deceased to get off, but he did not do so, and his trip ran into the cars standing on the track before he got off the trip; that there was a certain 40-foot space along the track where a driver could get off, and that was within 30 feet of where the driver boss had left his cars standing on the track; and that it was in this way that the deceased lost his life. There is no evidence in the record that the peculiar condition of this entry was ever made known to the deceased, and it was not made known to him that the drivers had to get off before reaching the "parting" track where cars were left standing. The driver boss, who called to the deceased to get off the trip, did not get off until the 40-foot space was reached. The evidence as to what experience the deceased had as a driver was conflicting to some extent, but there was no conflict upon the conduct of the deceased and the other employes of the defendant just before the injury occurred. There is no evidence that in any way shows that the deceased did not do just as all other drivers on this entry did, except he did not get off at the place where it seems from the evidence to be necessary to avoid possible injury; and it does not appear in evidence that he had any knowledge of the necessity to get off at this place.

Without this particular knowledge, this was a dangerous place in which to work; and, even though the deceased may have had much experience in driving as defendant attempted to show, this experience would have been useless to him unless information had been given to him as to the necessity of getting off before he completed his work by bringing his trip to the proper place.

Under the evidence in the case, it became a question for the jury to determine, under proper instructions from the court, as to whether or not the defendant exercised ordinary care in furnishing to the deceased a reasonably safe place in which to work, and the court ruled properly in not sustaining the demurrer to the evidence. The evidence offered by the plaintiff was such as would reasonably warrant a jury in finding that the defendant was guilty of negligence in manner as charged by the plaintiff, and there was nothing in the evidence which in any way tended to show that the deceased was guilty of any negligence on his part which contributed to the injuries which he sustained.

The defendant had as its defense: (1) A general denial; (2) assumption of risk; and (3) contributory negligence on the part of the deceased. No evidence was offered by the defendant to sustain its denial. Under the rule of this court as announced in the case of Frederick Cotton Oil & Mfg. Co. v. Traver, 36 Okla. 717, 129 Pac. 747, in view of the opinion which we entertain upon the question of primary negligence on the part of the defendant, the question of assumption of risk is practically eliminated from the case. The deceased could not have assumed a risk of which he knew nothing, or of which he learned at the very time of the injury.

2. There being nothing in the circumstances tending to show contributory negligence on the part of the deceased under the evidence of the plaintiff, the burden of proving this defense rested upon the defendant under the rule announced in the case of Marth v. Kingfisher Commercial Club, 44 Okla. 514, 144 Pac. 1047, wherein it was held:

"In an action for personal injury, where the defendants allege that plaintiff was guilty of contributory negligence and plaintiff's evidence shows the defendants guilty of negligence, with nothing in the circumstances establishing contributory negligence on his part, it is error for the court to refuse to instruct the jury that the burden of proving contributory negligence is on the defendants."

The defendant offered no evidence which in any way tended to sustain this special defense, and hence the question of contributory negligence was not in the case. It is contended that the instruction to the jury

upon the question of contributory negligence was erroneous, and that the court should have given to the jury the instruction upon that question which was requested by the defendant. Inasmuch as the burden of proof as to this special defense was upon the defendant under the state of the record, and the defendant in no way submitted any evidence to sustain this burden, there was no necessity for the submission of the question to the jury and the court in submitting this question to the jury was more liberal to the defendant than the law requires, and if an erroneous instruction was given in this connection, it was without prejudice to the rights of the defendant.

3. Again, it is contended that the court permitted counsel for plaintiff to make to the jury an improper and prejudicial argument. The statements of counsel in the argument to the jury indicate an unwarranted anxiety on the part of counsel to secure a favorable verdict from the jury so far as the printed testimony of the witnesses discloses, but there may have been something in the conduct and demeanor of the witnesses as they appeared before the jury that would warrant the statements that were made. The trial court promptly overruled the objection to the argument, and we must indulge the presumption that such argument was warranted by the conduct of the witnesses before the jury in view of the action of the trial court in overruling the objections made to it when such an argument might have been proper under conditions that could have existed at the trial which would not appear from the printed record of the proceedings.

4. We have examined instructions Nos. 19, 20, 21, 22, and 23, which were requested by the defendant, and which the court refused to give to the jury. These instructions were to the effect that, when a party produces a witness, he thereby vouches for his truth and veracity. While this is true to the extent that he cannot impeach their general reputation for truth and veracity or impugn their credibility by general evidence tending to show them unworthy of belief, yet there is no authority to which our attention has been called that holds it to be the duty of the court to instruct the jury to this effect. In fact, we believe it would be an infringement upon the province of the jury for the court to give such an instruction, as the law makes it the duty of the jury to determine for itself the credibility of all witnesses that appear before it. The refusal by the court to give hese instructions was not error, the court having given the general instruction upon the question of the credibility of witnesses.

5. It is urged that the trial court committed error in permitting the introduction of incompetent evidence. We have examined the record bearing upon the assignments of error on that account, and have concluded that there was no prejudicial error committed by the trial court in this respect. The verdict in the case is more than just to the defendant, and all the rights which the law accords to a defendant in a personal injury case were more than protected by the instructions given in this case at its request. What we mean by this is that an erroneous instruction seems to have been given us to the measure of damages at the request of the defendant, which limited the amount of plaintiff's recovery to such an amount as a father could have recovered on account of the death of a son under the facts as proven in this case. This instruction was error in favor of the defendant, and no cause of complaint exists in favor of the defendant on account of the judgment of the trial court.

The judgment appealed from is affirmed, with costs.

By the Court: It is so ordered.