## MIDLAND VALLEY R. CO. v. COX.

No. 7744—Opinion Filed Dec. 19, 1916.

Rehearing Denied Feb. 5, 1918.

(170 Pac. 485.)

1. **Master and Servant — Master's Duty — "Reasonably Safe Place" — Reasonable Care in Providing a Safe Place."**

In this state the two terms "reasonably safe place" and "reasonable care in providing a safe place" as a general rule have been used interchangeably.

2. **Same—Tools and Appliances.**

It is the duty of the master to use reasonable care to provide the servant with a reasonably safe place in which to work, and reasonably safe tools with which to work, taking into consideration the nature and character of the work to be performed, and the dangers ordinarily arising therefrom.

3. **Master and Servant—Contributory Negligence—Assumption of Risk—Questions for Jury.**

The defenses of contributory negligence and assumption of risks under the Constitution of this state are questions of fact, and must, in all cases, be left to the jury.

4. **Master and Servant — Assumption of Risk — Unusual and Extraordinary Defects—Promise to Repair.**

While as a general rule the servant does not assume the risks arising from defects that are unusual or extraordinary, or due to the master's negligence, not arising from a violation of a statutory duty, if the defects are open, visible, and known to the servant, he does assume them, and cannot recover if his injury arises therefrom, unless the master promises to repair the same, and the servant in good faith believes the same will be done in a reasonable time and continues in the employment.

5. **Same—Assumption of Risk—Promise to Repair—Instruction.**

When the servant knew of the defects not arising from a violation of a statutory duty, it is immaterial how the same were created; that is, whether due to usual or unusual conditions, or to the master's negligence. He cannot recover unless there has been a promise to repair and a reliance thereon as stated above; and instructions here upon the assumption of risk arising from negligence of the master and unusual conditions examined, and held that same were not

prejudicial when considered with the other instructions of the court and the established facts in the case.

## 6. Same — Defects — Promise to Repair — Proof.

The promise to repair may be inferred by the servant from the acts and conduct of the master, and need not be in express words.

(Syllabus by Hooker, C.)

Error from District Court, Osage County; R. H. Hudson, Judge.

Action by Henry Cox against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

O. E. Swan, for plaintiff in error.

B. B. Blakeney and J. H. Maxey, for defendant in error.

Opinion by HOOKER, C. This is an action for personal injuries alleged to have been received by the plaintiff, Henry Cox, while in the employ of the defendant as a blacksmith. And it is alleged that the injuries received by him were due to the carelessness and negligence of the defendant company in failing and refusing to furnish him a reasonably safe place in which to work, and reasonably safe tools with which to work, in that the defendant maintained in its shops at Muskogee, where plaintiff was employed, a certain steam hammer of cast iron, on which he and other blacksmiths employed by the company were required to work; that this hammer hit a stroke of about 1,500 pounds, and usually from 12 to 15 blows a minute; that a short time after he entered the services of the company he noticed there was an iron band placed around the foundation block of the hammer, and that it was a little loose, and that it finally became so loose it was unsafe, and he called the attention of the foreman thereto, which was on or about the 25th day of August, 1912, and that the foreman promised to have the same fixed, and that the plaintiff relied thereon and continued to work, but that, on or about the 12th day of September, 1912, which was about 17 days after he had reported the defect to the foreman and promises of repair were made, the plaintiff was injured. At the time of his injury, he was working on a heavy piece of steel, holding the same under the hammer by means of a pair of wooden tongs; that on account of the strokes of the hammer, the die had gotten out of alignment, which caused a severe jar to plaintiff's hand, bruising the same and eventually causing him to lose his left hand and arm.

The evidence introduced establishes that the plaintiff, Cox, was conversant with and had knowledge of the defective machinery, of which he complains here, virtually during all the time of his employment, but finally it became so bad, and to him appeared so dangerous and unsafe, that on the 25th day of August, 1912, he called the attention of the foreman of the shop to this condition, and the foreman promised to repair the same, upon which promise Cox relied, and remained in the service of the company until the 12th day of September following, upon which date he was injured in the manner and form stated in the petition.

Upon the trial of this cause, the court gave instructions numbered 9, 10, 11, 12, 13, and 14, to all of which exceptions were duly saved by plaintiff in error, and it is contended here that instruction No. 9 is error because it states the rule as to the duty of the master to use reasonable care to furnish the servant a safe place in which to work, and that the rule as stated is followed by the phrase "it is the duty of the master to preserve" the tools, etc., in a reasonable safe condition, and that when the court said in this instruction, "and in this connection you are instructed that if you find from a fair preponderance of the evidence that the tools, appliances, and instrumentalities furnished by the defendant, Midland Valley Railroad Company, to the plaintiff, Henry Cox, with which to do work that he was required to perform, were not reasonably safe tools, appliances, and instrumentalities for the performance of the said work, then and in that event the defendant company is guilty of negligence; and if you find from a fair preponderance of the evidence that, as the direct and proximate result of such negligence of the defendant, the plaintiff was injured at the time and place and in the manner claimed by him, then and in that event your verdict shall be for the plaintiff and against the defendant." The defendant company was made an absolute insurer of the safety of its tools and appliances, and that the question of negligence, if the hammer complained of was defective, was taken from the jury, and that, although the proof of the defendant was that the hammer was in a safe condition, yet by the instructions the court told the jury that if the same was not reasonably safe, the defendant was negligent without regard to whether it had exercised ordinary care.

By an examination of the instruction complained of, we find that the court instructs the jury that it is, first the duty of the master to furnish to his servant reasonably safe tools, etc., with which to do the work which

the servant is required to perform, and that this is a personal duty of the master, for which he remains responsible for the proper discharge thereof upon the part of his agents and his servants. But the court said in this instruction:

"By this it is not meant that it is the absolute duty of the master in all events to furnish safe tools, appliances, and instrumentalities, but it is his duty to use reasonable care to see that the tools, etc., furnished are reasonably safe for the performance of the work required of the servant, and it is the duty of the master to preserve them in that condition."

This part of this instruction is not subject to the criticism offered against it. The jury is told by this instruction that the master is only required to use reasonable care to see that the tools furnished the servant are reasonably safe for the performance of the work required of him, and when the court added, as should have been done, that it was the duty of the master to preserve these tools in that condition, it meant nothing more nor less than a reasonably safe condition for the performance of the work required.

This court in Frederick Cotton Oil Co. v. Traver, 36 Okla. 722, 129 Pac. 749, said:

"There is one other assignment which plaintiff in error urges at considerable length, which, in order to prevent its arising in a future trial, it might be well to settle here, viz., that the court erred in the following instruction: 'You are instructed that, under the law, it is the duty of the master to provide a servant with a reasonably safe place to work and with reasonably safe tools or appliances with which to work.' It is contended by plaintiff in error that this instruction is erroneous and vicious, in that it instructs the jury that the master must furnish a place reasonably safe, whereas his duty is only to use reasonable care in furnishing such a place. The materiality of this distinction has not been generally recognized by the courts. The two terms, 'reasonably safe place,' and 'reasonable care in providing a safe place,' as a general rule, have been used interchangeably. Some of the standard text-books use the term 'reasonably safe place' as the adopted rule. Others use the two terms interchangeably. In 20 Am. & Eng. of Law (2d Ed.) 55, we find the following text supported by more than 200 decisions from 37 different states, and from the United States Supreme Court and the courts of Canada and England, viz.: 'In accordance with the rule that reasonable care must be taken to protect one's servants from injury, masters owe to their servants the duty of providing them with a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment, having regard to the character of the services required, and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. This is a positive duty which the master owes, and it is not one of the perils of risks assumed by a servant in his contract of employment; and the servant is entitled to rely upon the assumption that the master has performed the duty, imposed on him by law, of providing a reasonably safe place to work."

In 26 Cyc. 1097, the following rule is stated:

"'It is the positive duty of a master to furnish his servant with reasonably safe instrumentalities wherewith and place wherein to do his work, and, in the performance of these obligations imposed by law, it is essential that regard should be had, not only to the character of the work to be performed, but also to the ordinary hazards of the employment; and the servant may assume that the master has performed his duty.' This rule is supported by decisions from 43 states and from the United States Supreme Court and the courts of England and Canada. Our own court in the case of McCabe & Steen Construction Co. v. Wilson, 17 Okla. 355, 87 Pac. 320, uses the two terms interchangeably, or treats the terms as having the same legal effect. In the course of the opinion the court quotes from Ruemmeli-Braum Co. v. Cahill, 14 Okla. 422, 79 Pac. 260, as follows: 'It is the positive duty of the master to use reasonable care in providing safe tools, machinery, and appliances to work with, a safe place to work in, safe materials to work on.' * * * And, after quoting the above language, the court says: 'As above stated, it is now the fundamental and well-settled law of the land that it is the duty of the master to furnish the servant safe tools, materials, and structures to work with and upon, and to keep them in proper repair.' In view of the overwhelming recognition of the interchangeable use of the terms 'duty to provide a reasonably safe place,' and 'duty to exercise reasonable care in providing a safe place,' we cannot be constrained to treat this objection of itself reversible."

The rule laid down in the case above cited was approved by this court in Big Jack Mining Company v. Parkinson, 41 Okla. 131, 137 Pac. 678, and in Great Western Coal & Coke Co. v. Malone, 39 Okla. 698, 136 Pac. 403. And in the Frisco Lumber Co. v. Thomas, 42 Okla. 675, 142 Pac. 312, this court said:

"The complaint regarding instructions Nos. 2 and 3, as given by the court, seems to go to the statement they contain that 'ably safe place for his employes to work.' This phrase is not regarded as a technically correct expression of the master's duty in this regard; it would be better to say that 'the master is required to furnish a reason-

'the master is required to use ordinary care,' etc.; but, as shown by this court in Frederick Cotton Oil & Mfg. Co. v. Traver, 36 Okla. 717, 129 Pac. 747, the two ways of expressing the master's duty as to 'safe place' are used interchangeably in textbooks and decisions throughout the country,"

In Chickasaw Compress Co. v. Bow, 47 Okla. 576, 149 Pac. 1166, it appears that Instruction No. 10 in this case was as follows:

"You are instructed that it was the duty of the Chickasaw Compress Company to provide a suitable and reasonably safe place for the plaintiff to work; and, if you believe from the evidence that the said compress company had caused a hole to be torn up in the platform and had left the same open, without any notice to the plaintiff and without any warning, and that while in the exercise of ordinary care he did not discover that said hole was open, and in pursuing his duty as an employe of said company passed along the way, and fell into said hole by reason of the negligence of said compress company, then your verdict should be for the plaintiff for such amount as in your judgment he is entitled."

It was insisted that this instruction was erroneous because it informed the jury that it was the positive duty of the defendant to provide a suitable and safe place for the plaintiff to work, but the court said:

"Taken alone, this statement of the law cannot be regarded as a technically correct statement of the measure of the duty which a master owes to his servant."

In instruction No. 9, to which no exceptions were taken, the jury was told that it was the duty of the master to provide a place which was safe, but that the law imposes the obligation to use ordinary care, skill, and diligence in that regard. The complaint to the instruction now under consideration is: That it was the duty of the compress company to provide a suitable and reasonably safe place for the plaintiff to work. It would have been better, and have been unobjectionable to say "that the defendant was required to use ordinary care," but the two ways of expressing a master's duty in this particular are used interchangeably in the text-books and decisions throughout the country and in this state. In the instant case the trial court gave instructions Nos. 20, 22, and 23:

"20. You are instructed that the defendant in this case was not an insurer of the plaintiff's safety while the plaintiff was using the machinery and appliances furnished him, but defendant was only required to exercise that degree of care, in seeing that the machinery and appliances furnished plaintiff were safe, that a reasonably prudent man would exercise for the safety and protection of his own person under the same or similar circumstances."

"22. You are instructed that the fact that the defendant was using, in connection with its hammer, appliances which had been repaired, does not raise the presumption of negligence upon the the part of the defendant. The defendant had a right to repair the appliances and use the same in their repaired condition, and it is incumbent upon the plaintiff to show by a preponderance of the evidence that the appliances, in the condition in which they were when he was working with them, were not reasonably safe for the purpose for which they were used, and that he was injured by reason of their defective condition, while he himself was in the exercise of ordinary care for his own safety.

"23. You are instructed that the mere fact that the plaintiff was injured while employed in the performance of work for the defendant company would not of itself be sufficient to warrant you in returning a verdict in favor of the plaintiff and against the defendant. Before you would be warranted in finding a verdict in favor of the plaintiff and against the defendant, you must find from a preponderance of the evidence that the defendant company failed to exercise reasonable and ordinary care in furnishing the plaintiff with reasonably safe machinery, tools, and appliances with which to do the work he was called upon to perform, and that the plaintiff, while in the exercise of reasonable and ordinary care and diligence for his own safety, was injured as the direct and proximate result of the failure of the defendant company to furnish reasonably safe machinery, tools, and appliances."

By instruction No. 20 the jury was admonished that the defendant company was not an insurer, but was only required to exercise that degree of care that a reasonably prudent man would exercise for his own safety under the same circumstances. And by instructions Nos. 22 and 23, the court places the burden upon the plaintiff to show by a preponderance of the evidence that the tools complained of were unsafe for the purposes for which they were to be used, and that he was injured by reason of their defective condition while he himself was in the exercise of ordinary care for his own safety.

It is asserted by the plaintiff in error that instruction No. 9 invades the province of the jury, and in effect directs the jury what to do. This we cannot see. This form of instruction has been approved by this court in a number of cases, some of

which are cited above. By this instruction the jury is told that the master was not an insurer, nor was it his absolute duty, under all circumstances, to furnish safe tools to his servant, but that he was only required to use reasonable care to see that these tools were reasonably safe, and that if the jury found from the evidence that the master had failed to furnish tools that were not reasonably safe, and by reason of this failure the plaintiff was injured as claimed, you should find for him and against the defendant, unless the jury should further find from the evidence that the plaintiff was guilty of contributory negligence, or that the plaintiff had assumed the risks.

Construing instruction No. 9 alone, we do not find the same subject to the objections urged against it, and, considering the same in connection with the other instructions of the court, we believe that the law of the case was fairly presented to the jury, and that the substantial rights of the plaintiff in error were not prejudiced thereby. Instructions, as a general rule, should be construed together as a whole, and, when so construed, if they properly state the law, they will not be objectionable, although some of them or portions thereof, standing alone, might be misleading or may be technically inaccurate. See cases cited in First National Bank v. Ingle, 37 Okla. 284, 132 Pac. 895.

Plaintiff in error contends that instruction No. 10 is erroneous for the following reasons: (1) Because it conveys the idea that the servant does not assume extraordinary or unusual risks, and limits the assumption of risks to the ordinary kind. (2) Because it relieves the servant from the assumption of risks created by the negligence of the master, although the servant may know of the defects. (3) Because it does not distinguish between the usual and unusual risks so far as the knowledge of the servant is concerned. (4) Because it limits the assumption of risks to ordinary and usual risks and, in effect, tells the jury that if the plaintiff was injured on account of the negligence of the defendant, he is entitled to recover thereby, eliminating the assumption of risks from the consideration of the jury, and, it is likewise erroneous because it ignores knowledge acquired by the plaintiff of the defect during the course of his service.

This case was submitted to the jury upon this theory, for the court in instruction No. 11 told the jury that if the servant having knowledge of the defect in machinery gives notice thereof to the proper officer on his

promise that such defect shall be remedied, his subsequent use of the machinery in the belief, well grounded, that it will be put in proper condition within a reasonable time, does not necessarily or as a matter of law mean that the servant assumes the risk of using the defective machinery or make him guilty of contributory negligence. That it was for the jury to say whether he was in the exercise of due care in relying upon said promise and in using the machinery after knowledge of its defective condition. This instruction clearly presented this issue to the jury; the jury found the issue in favor of the plaintiff; there is evidence supporting the verdict of the jury upon that proposition. This court in the case of Chicago, Rock Island & Pacific Railway Company v. Wright, 39 Okla. 93, 134 Pac. 430, said:

"Under all the facts disclosed by the evidence it was a question of fact for the jury to say whether plaintiff was guilty of contributory negligence. It is a rule very generally recognized that, where a master has knowledge of a defect, and promises to repair it, the servant may rely thereon and continue to use the appliance for a reasonable time, without assuming the risk of being guilty of contributory negligence in so doing, providing the danger is not so imminent that a reasonably prudent man would not continue to work therewith. * * * The promises need not be in direct words; but it is sufficient if it may fairly be inferred. * * * At common law it has been held a question of fact for the jury to determine, under all the circumstances of the case, whether upon continuing in the use of the defective machinery, after notice to the master and a promise to repair, the injured party was guilty of contributory negligence * * *"

In Hough v. Texas & Pacific Railway Co., 100 U. S. 215, 25 L. Ed. 612, Mr. Justice Harlan enunciates the following doctrine:

"If the servant having knowledge of a defect in machinery, gives notice thereof to the proper officer, and is promised that such defect shall be remedied, his subsequent use of the machinery, in the belief, well grounded, that it will be put in proper condition within a reasonable time, does not necessarily, or as a matter of law, make him guilty of contributory negligence. It is for the jury to say whether he was in the exercise of due care in relying upon such promise and in using the machinery after knowledge of its defective or insufficient condition. The burden of proof in such a case is upon the company to show contributory negligence."

This court in passing upon the doctrine of assumed risks, said in the case of M., O. & G.

Ry. Co. v. Overmyre, 58 Okla. 723, 160 Pac. 933:

"While a person entering voluntarily into a contract of service assumes all the risks and hazards ordinarily incident to the employment, and such as are liable to arise from defects which are patent and obvious to a person of his experience and understanding, he does not, generally speaking, assume risks arising out of the negligence of the master. The servant assumes all the ordinary risks of the employment which are known to him, and which could have been known with the exercise of ordinary care to a person of reasonable prudence and diligence under like circumstances. Risks not naturally incident to the occupation, but which may arise out of the failure of the employer to exercise due care, with respect to providing a safe place to work and safe appliances for the work, the employe is not considered as assuming until he becomes aware of their defect or improper construction, and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. Schlemmer v. Buffalo, R. & P. R. Co., 220 U. S. 590, 596 [31 Sup. Ct. 561] 55 L. Ed. 596, 600; Texas & P. R. Co. v. Harvey, 228 U. S. 319, 321 [33 Sup. Ct. 518] 57 L. Ed. 852, 855; Gila Valley, G. &. N. R. Co. v. Hall, 232 U. S. 94, 102 [34 Sup. Ct. 229] 58 L. Ed. 521, 524; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492 [34 Sup. Ct. 635] 58 L. Ed. 1963, 1070 [L. R. A. 1915C, 1, Ann. Cas. 1915B, 475]; Chesapeake & O. R. Co. v. De Atley, U. S. Adv. Ops. 1915 [241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016]. The master's negligence, of which the servant is ignorant, or not properly chargeable, is a risk not assumed by the latter. Coalgate v. Hurst, 25 Okla. 588, 107 Pac. 657; Chicago, R. I. & P. R. Co. v. Duran, 38 Okla. 719, 134 Pac. 876; Dewey Portland Cement Co. v. Blunt, 38 Okla. 182, 132 Pac. 659; Chicago, R. I. & P. R. Co. v. Wright, supra [39 Okla. 84, 134 Pac. 427]. Whether the risk was an ordinary risk of the employment, or whether an extraordinary risk, known to and appreciated by the deceased, or with knowledge of which he was properly chargeable, was a question of fact to be left to and determined by the jury. Primary negligence being shown, the question of assumed risk was properly in issue. St. Louis & S. F. R. Co. v. Long, 41 Okla. 177, 137 Pac. 1156, 37 Ann. Cas. [1915C] 432."

Also the Supreme Court of the United States in C. & O. Ry. Co. v. De Atley, 241 U. S. 310, 36 Sup. Ct. 565, 60 L. Ed. 1016, said:

"On the facts of the case before us, therefore, plaintiff having voluntarily entered into an employment that required him on proper occasion to board a moving train, he assumed the risk of injury normally incident to that operation, other than such as might arise from the failure of the locomotive engineer to operate the train with due care to maintain a moderate rate of speed in order to enable plaintiff to board it without undue peril, to himself. But plaintiff had the right to presume that the engineer would exercise reasonable care for his safety, and cannot be held to have assumed the risk attributable to the operation of the train at an unusually high and dangerous rate of speed, until made aware of the danger, unless the speed and the consequent danger were so obvious that an ordinarily careful person in his situation would have observed the one and appreciated the other. Gila Valley G. & N. R. Co. v. Hall, 232 U. S. 94, 101, 58 L. Ed. 521, 34, 34 Sup. Ct. Rep. 229; Seaboard Air Line R. Co. v. Horton, 233 U. S. 492, 504, 58 L. Ed. 1062, 1070, L. R. A. 1915C, 1, 34 Sup. Ct. Rep. 635, Ann. Cas. 1915B, 475, 8 N. C. C. A. 834.

"It is argued that, so far as the question of assumed risks is concerned, it makes no difference, in the case of a brakeman about to board a moving train, whether it is operated at a low or at a high speed; that if the train is moving slowly the risk is an ordinary one, incident to the business of railroading; while if it is moving rapidly, the risk is open, obvious, and apparent. Were we to consider only extreme cases, such as were instanced in argument, the point might be conceded; that is, that mounting a train operated at 1 mile per hour is an ordinary risk, while mounting a train operated at 50 miles per hour presents a risk which, although extraordinary, is open, obvious, and apparent. But these extremes do not present an apt illustration. A speed very much below 50 miles would endanger the brakeman's safety, at the same time being much less apparent. If those operating the train in question knew that plaintiff intended to board it at that point, and the verdict is to that effect, the jury was warranted in finding that plaintiff had a right to expect that the train would be moving at a moderate rate of speed such as would enable an ordinary careful brakeman to get on with reasonable safety, and this upon the ground that, as head brakeman plaintiff had the right—indeed, that it was his duty—to get upon the engine, since otherwise the train would be left without a head brakeman and the engineer without the information required for the safe operation of the train, and that plaintiff had no notice nor any opportunity to determine with reasonable certainty what the speed of the train was, or that it was too great for his safety, until the engine had practically reached him. It cannot be said, as matter of law, that a speed of 12 miles per hour would necessarily be obvious to him as a dangerous speed, before he

made the attempt to board the train. It is insisted that the true test is not whether the employe did, in fact, know the speed of the train and appreciate the danger, but whether he ought to have known and comprehended; whether, in effect, he ought to have anticipated and taken precautions to discover the danger. This is inconsistent with the rule repeatedly laid down and uniformly adhered to by this court. According to our decisions, the settled rule is not that it is the duty of an employe to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employe may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinary careful person, under the circumstances, would observe and appreciate them. Id."

We gather from the authority above cited that if the risks are extraordinary and unusual and they are open and visible and the servant has knowledge of them, he assumes the risks, or if the defects complained of be created by the master's negligence and they are open and visible, and the servant has knowledge thereof, that he assumes the risks incident to the use thereof; and if is immaterial whether the risks be extraordinary and unusual or whether the defects be created by the negligence of the master, for if they are open and visible and the servant knows of the existence of the same he assumes all risks accruing to him by virtue of the use thereof, unless he is relieved from the doctrine of assumption by virtue of a promise to repair made by the master and relied upon by him as a result of which he continues in the service of the master, so in this case the defendant in error is not entitled to recover, for it must be admitted that he had knowledge of these defects long prior to the injury, unless the master promised to repair the same and he relied upon the promise and continued in the service of the company.

It may be said that, the court using the words, "Where he knows or in the exercise of reasonable and ordinary care could know the risks to which he is exposed, he will as a rule be held, to have assumed them subject to the qualifications stated in the next instruction," this language, as applicable to the facts in this case, can mean but one thing, and that is, that the plaintiff in this case assumed the defects, if any, in the machinery, which were complained of here, unless the plaintiff was relieved by the promise to repair as stated in instruction No. 11.

There is no controversy in the evidence here as to the defects complained of being open and visible, nor is there any doubt but that the plaintiff in this case had knowledge thereof. In fact his testimony discloses that he informed the master thereof, and that the company promised to repair the same. So here it is immaterial whether the defects complained of were ordinary and usual, or extraordinary and unusual, or due to the master's negligence, as the plaintiff is not entitled to recover on account of his knowledge thereof, unless he complained to the master and a promise was made to repair as set out in instruction No. 11. The jury here could not, under the facts of this case, have found for the plaintiff in any sum whatever, unless it had found the issues presented by instruction No. 11 in favor of the plaintiff below.

With this view of this case, while not approving instruction No. 10, we must hold that the errors, if any, in said instruction are harmless and not prejudicial to the rights of the plaintiff in error.

In City of Woodward v. Bowder, 46 Okla. 544, 149 Pac. 140, it is said:

"The burden of proof, or, in other words, of going ahead with the evidence, to prevent an adverse ruling or action by the judge upon a question of law, as, for illustration, upon a demurrer or motion, or in giving or refusing an adverse instruction involving the question of who has the burden, with its resultant effect upon the verdict of the jury in some instances, may often shift from one party to the other during the trial; but the burden of proof as it affects the duty of the jury in respect to its action upon the different possible states of its own belief as to essential affirmative allegations put in issue by mere denials, or, in other words, the risk of the jury's mere nonbelief, never shifts, but remains with the party who has it in the first instance; and in the event of the jury's nonbelief, even though it does not positively disbelieve the plaintiff's allegations, the verdict should be for the defendant. 4 Wigmore on Evidence. §§ 2485-2489; 2 Modern Law of Evidence (Chamberlayne) §§ 938, 941; Jones on Evidence (2d Ed.) § 177; Standard Marine Ins. Co. v. Traders' Compress Co. [46 Okla. 356] 148 Pac. 1019."

Likewise in Standard Marine Ins. Co. v. Traders' Compress Co., 46 Okla. 356, 148 Pac. 1019, this court said:

"The burden of establishing the entire case by a preponderance of the evidence is at all times upon the party having the affirmative, and remains during the entire

case where the pleadings originally placed it. Proof of the bailment and loss or injury constitutes a prima facie case under certain conditions, but this has no effect upon the burden of proof, as it remains unchanged. The duty of proceeding to adduce evidence after a prima facie case has been established, shifts to the party with the negative of the issue. This, however, is not a shifting of the burden of proof. as it remains where the pleadings placed it; but ,after a prima facie case has been established, the burden of producing the evidence necessary to overcome the prima facie case shifts to the defendant, and this is termed a shifting of the burden of evidence."

See, also, Fifth Ave. Society v. Phillips. 39 Okla. 799, 736 1076; Furniture Co. v. Harbour, 42 Okla. 335, 140 Pac. 956.

In this case the burden of proof on the issue of contributory negligence and assumption of risk remains where the pleadings originally placed it, and that was upon the defendant company. While the plaintiff may have the burden of evidence to show that he is wthin the exception to the rule to the assumption of risks after the defendant has shown certain facts, still the burden of proof remains with the company to establish contributory negligence, or the assumption of risks. The instruction here presents this question to the jury for it to say whether the plaintiff was in the exercise of due care in relying upon the promise of the company to repair and using the machinery after knowledge of its condition, or whether the plaintiff by using it assumed the risks or was guilty of contributory negligence.

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.